STATE ex rel. EAGYE, APPELLANT, *v.* BAWDEN et al.,
RESPONDENTS.

(No. 3,754.)

(Submitted October 4, 1915.   Decided October 29, 1915.)

[152 Pac. 761.]

*Intoxicating Liquors — Local Option — Petition for Election —
Sufficiency—Statutory Construction—Repeal by Implication—
Conflict of Statutes—Constitution.*

Elections—Qualifications of Electors.
    1.  In the absence of any property test for voters, a person who
    possesses the qualifications enumerated in section 2, Article IX of
    the Constitution, and who is duly registered, is entitled to vote with-
    out reference to his property holdings.

Local Option Election—Petition—Sufficiency.
    2.  *Held,* that a petition for the submission of the question of local
    option, which contains the names of one-third of the tax-paying electors
    whose names appear on the last assessment-roll, is sufficient to meet
    the requirement of section 2041, Revised Codes.

Same—Qualifications of Signers—Power of Legislature.
    3.  The legislature may, in the absence of constitutional restriction,
    prescribe whatever qualifications it may choose for signers to a peti-
    tion for the holding of an election to determine the question whether
    intoxicating liquors shall be sold within a county.

Same—Statutory Construction.
    4.  That construction of a statute which gives force and meaning to
    every portion of it must, if possible, be adopted.

Same—Time for Holding Election—Repeal by Implication.
    5.  The provision of section 2041, Revised Codes, requiring a local
    option election to be held within forty days after the receipt of the
    petition, *held* to have been impliedly repealed by Chapter 122, Laws
    of 1915, providing that a period of not less than sixty days· must
    elapse between the time an election is called and the day it is held.

Same—Power of County Commissioners to Call Election.
    6.  *Held,* that inasmuch as Chapter 39, Laws of 1915, the purpose of
    which is to submit to the electors of the state the question whether
    state-wide prohibition shall obtain in Montana, cannot, if voted upon
    favorably, have any force until after December 31, 1918, its effect
    is not to withdraw from a board of county commissioners in the
    interim the authority possessed by it under the local option law to
    call an election for substantially the same purpose so far as
    the particular county is concerned.

    [As to irregularities that will avoid an election, see note in 90 Am.
    St. Rep. 46.]

Same—Conflict of Statutes.
    7.  The restriction in section 2046, Revised Codes, that no other elec-
    tion must be held in the same county oftener than once in two years,
    being directed to local option elections only, it was not infringed by
    the act of the county board in calling a special election for October,

1915, after the legislature had referred the question of state-wide prohibition to the voters at the election of 1916.

[As to tie vote at local option election, see note in 49 L. R. A. (n. s.) 1204.]

Same—Time for Holding Election—Constitution.

8.   Section 1, Article V, of the Constitution, requires referred measures to be voted upon at biennial general elections, while the local option law in section 2041, Revised Codes, prohibits such elections to be held in any month when a general election occurs. *Held,* that there was no repugnancy between the Constitution and section 2041.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

CERTIORARI by the State of Montana, on the relation of Joe Eagye, against J. H. Bawden and others, as the board of county commissioners of Richland county, to review an order calling a local option election. From a judgment quashing the writ, relator appeals. Affirmed.

*Mr. Odell W. McConnell,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Walsh, Nolan & Scallon,* for Respondents, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In June of this year a petition signed by more than one-third of the electors of Richland county was presented to the board of county commissioners, praying that an election be called to determine whether intoxicating liquors should be sold within that county.   At the time the petition was presented there were on the last assessment-roll of the county the names of 1,654 qualified electors.   Of those who signed the petition, 573 were listed on such assessment-roll.   Joe Eagye, a tax-paying elector of the county, protested to the board against an order calling the election, but the protest was overruled, the petition granted, and the election called for October 13.   Eagye thereupon secured a writ of *certiorari* to review the action of the board.   Upon the

return and after a hearing, the district court quashed the writ, and the relator appealed.

The proceedings before the county board were instituted in pursuance of the local option statute, which is found in sections 2041–2049, Revised Codes. Section 2041 provides: "Upon application by petition, signed by one-third of the voters who are qualified to vote for members of the legislative assembly in any county in the state, the board of county commissioners must order an election to be held at the places of holding elections for county officers, to take place within forty days after the reception of such petition, to determine whether or not any spirituous or malt liquors, wine or cider, or any intoxicating liquors or drinks may be sold within the limits of the county. No election, under this chapter, must take place in any month in which general elections are held. The county commissioners must determine on the sufficiency of the petition presented by the last assessment-roll of the county."

Appellant insists that this section contemplates a petition [1, 2] signed by one-third of the qualified electors of the county —in this instance, 943—and that the names of all these signers must appear on the last assessment-roll. We are unable to accept this theory. Such a burden would be so onerous as to render the statute incapable of application in many instances. It is a matter of common knowledge that many of the persons whose names appear on the assessment-roll are not qualified electors of the county, and, likewise, that the names of many voters are not on the assessment-roll. In the absence of any property test for voters, a person who possesses the qualifications enumerated in section 2, Article IX, of the Constitution, and who is duly registered, is entitled to vote without reference to his property holdings. Carried to its logical conclusion, the contention of appellant would lead to this result: If, for instance, in a given county having 3,100 qualified electors, but 1,000 were taxpayers whose names appeared on the last assessment-roll, it would be impossible to invoke the local option statute in that county, even if the petition were signed by every elector, for the names of one-

third of all would not appear on the last assessment-roll. Such a construction ought not to be adopted unless it is manifest that the legislature so intended. It could not have been intended that the assessment-roll should be consulted to determine whether the petition is signed by one-third of all the electors, for it would not furnish any information on the subject. The last sentence of section 2041 commands the board to determine the sufficiency of the petition by reference to the last assessment-roll. The provision is exclusive. The board is not authorized to consult any other source of information or to receive evidence which does not appear upon that roll.

With these principles in view, we think the intention of the legislature may be ascertained with reasonable certainty. The petition is merely the means by which the election machinery is set in motion. It does not have any influence upon the result of the election. When the board acts, either granting or denying it, the petition becomes at once *functus officio.* In the absence of constitutional restriction, the legislature was left free to [3] prescribe such qualifications for a signer to such petition as it might choose. (*State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078; *Missouri River Power Co.* v. *Steele,* 32 Mont. 433, 80 Pac. 1093.) From the fact that the last assessment-roll is employed as the final arbiter to determine the sufficiency of the petition, that a county-wide election involves an expenditure of large sums of public money derived chiefly from direct taxation, and that the tax-paying elector is interested beyond all others in determining whether such expense shall be incurred, we conclude that it was the intention of the legislature, however awkwardly expressed, that in this preliminary stage only tax-paying electors are to be considered; and, if the petition is signed by one-third of the qualified electors whose names appear on the last assessment-roll, it is sufficient. Such a construction gives force and meaning to every portion of section [4] 2041, and such a construction we are commanded to adopt if it can be done. (*Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454.)

The local option statute was first enacted in 1887 (Comp. Stats. [5] 1887, p. 1035), and with few unimportant modifications has been carried forward to the present time. During the interval many changes have been wrought in the general election laws under which a local option election must be held. Under existing statutes, a period of not less than sixty days must elapse between the time an election is called, and the time it is held. (Chap. 122, Laws 1915.) This last Act does not in terms repeal or amend the local option statute; but, from the fact that section 2041 requires a local option election to be held within forty days from the receipt of the petition, that provision must be deemed to be repealed by the later Act, by implication. Such repeal, however, does not operate to annul the entire local option statute. It extends only so far as the earlier Act is in irreconcilable conflict with the later one. In *United States* v. *196 Buffalo Robes,* 1 Mont. 489, the rule was announced as follows: "The law does not favor a repeal of a statute by implication. A subsequent statute to have this effect on a previous one must be wholly inconsistent and incompatible with it. It cannot be possible that both statutes should stand with[out] a palpable conflict between them. If one statute is thus inconsistent with another, then it repeals it by implication. If one statute conflicts with a portion of another so as to exhibit an inconsistency, then the inconsistent portion of the previous statute cannot stand, and is said to be repealed by implication. When two statutes conflict, the subsequent repeals the former by implication only so far as it conflicts therewith."

In 36 Cyc. 1073, the same doctrine is stated: "Where two legislative Acts are repugnant to, or in conflict with, each other, the one last passed, being the latest expression of the legislative will, must govern, although it contains no repealing clause. But it is not sufficient to establish such repeal that the subsequent law covers some, or even all, of the cases provided for by the prior statute, since it may be merely affirmative, or cumulative, or auxiliary. Between the two Acts there must be plain, unavoidable and irreconcilable repugnancy, and even then the old law

is repealed by implication only *pro tanto* to the extent of the repugnancy.''

There does not appear to be any further conflict between the registration law and the local option statute, and the elimination of the forty-day period within which the election was required to be held does not so far emasculate the entire measure that it may not be enforced in the absence of that provision.

It is further contended that, by submitting the question of [6]    state-wide prohibition to the voters of the state at the general election of 1916 (Chap. 39, Laws 1915), the legislative assembly assumed to withdraw from the county board all authority possessed by it under the local option law to call an election for the same general purpose within a county.    Chapter 39 above comprises, in sections 1 and 2, a complete measure, with a repealing clause in section 6.    Section 1 prohibits the traffic in intoxicating liquors in this state.    Section 2 fixes December 31, 1918, as the time when the measure shall take effect.    As authorized by section 1, Article V, of the Constitution, the legislature provided in sections 3 and 4 for a referendum of the measure, and by the act of referring it made its vitality to depend upon the vote of the electors of the state.    If the majority vote is against the measure, the Act will never be in force or effect; if the vote is favorable to state-wide prohibition, the Act will still not be in force until December 31, 1918, so that, whatever be the fate of the proposition submitted to the voters, Chapter 39 does not now have any present effect upon existing laws, and cannot have.    Section 6 specifically so provides: ''Sec. 6.    All Acts and parts of Acts in conflict herewith, particularly all laws of this state and all ordinances of cities and towns relating to the issuance of liquor licenses, are hereby repealed, after the 31st day of December, 1918, provided this Act is approved by the people.''
Section 115 of the Revised Codes provides: ''Sec. 115.    A bill passed by the legislative assembly and referred to popular vote at the next general election, or at a special election, shall not be in effect until it is approved at such general or special election by a majority of those voting for and against it.''

There is not any intention expressed by the legislature to interfere forthwith in any manner with the local option law. There is not anything inconsistent between the enforcement of the local option law in a given county, until December 31, 1918, and the enforcement of state-wide prohibition after that date, if the referred measure be adopted. If prohibition be defeated, the local option statute will still be in full force and effect, and the authority of a county board thereunder in no wise curtailed. The fact that the legislature has referred the state-wide prohibitory statute does not affect the authority of a county board to call a special election under the local option statute. (*State v. Paul,* 87 Wash. 83, 151 Pac. 114.) Neither is that provision of section 2046, which prohibits an election in any county oftener [7] than once in two years, infringed by the act of the board in calling an election for October 13, after the legislature had referred the prohibitory measure. The restriction in section 2046 is directed to elections held pursuant to the local option statute and to none other. There is not any repugnancy either [8] between the provision of section 1, Article V, of the Constitution, which requires referred measures to be voted upon at biennial general elections, and the provision of section 2041, which forbids a local option election to be held in any month in which a general election is held. They deal with different subjects, and each is controlling in its appointed sphere.

We think the judgment of the district court correct, and it is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SANNER: I concur in the result above announced and, for the most part, in the reasoning through which it has been reached. But I cannot assent to the meaning given the last sentence of section 2041. From the obvious ease with which the legislature could have expressed the intention ascribed to it in the foregoing opinion, from the clear, established meaning of the phrase ''voters who are qualified to vote for members of the

legislative assembly" as referring to a class of citizens whose names need not appear upon the assessment-roll, from the very unusual expedient of conditioning a submission to the voters at large upon the consent of a special class, and from the fact that in the law as originally enacted, the sentence in question appears as a "further proviso," I am inclined to the view that it is "one of those clauses which occasionally creep into the body of an Act as the result of misconception or ill-advised amendment, but which cannot be given effect without violence to the clear and plain intent of the law considered in its entirety." (*State ex rel. Seres* v. *District Court*, 19 Mont. 501, 506, 48 Pac. 1104; *State ex rel. Kehoe* v. *Stromme*, 49 Mont. 25, 139 Pac. 1002.)