STATE EX REL. FADNESS, APPELLANT, *v.* EIE ET AL.,
RESPONDENTS.

(No. 3,938.)

(Submitted November 24, 1916. Decided December 30, 1916.)

[162 Pac. 164.]

*Intoxicating Liquors—Local Option Election—Petition—Qualifications of Signers—Supplemental Petitions—Revocation of Withdrawal of Names — Mandamus — Appeal and Error — Briefs—Transcript—Copies—Service—Technical Violation of Rules.*

Appeal and Error—Briefs—Transcript—Copies—Service—Technical Violation of Rule.
1.   Technical noncompliance with the rule requiring copies of transcript and briefs to be served upon the attorney general in causes in which that officer must appear by virtue of his office, will not command reversal of an appeal where service of both had been made before submission of the cause and the state suffered no inconvenience because of the delinquency of opposing counsel.

Local Option Election—Petition—Qualifications of Signers.
2.   Whether a signer of a petition for a local option election is a taxpayer must be determined by an inspection of the last assessment-roll; and whether he is a qualified elector—the other qualification required by section 2041, Revised Codes—the board of county commissioners may ascertain, in the absence of any statutory direction on the subject, from any competent source of information, including the official register of voters, the testimony of witnesses, and, perhaps, the personal knowledge of the individual members of the board.

Same.
3.   The assessment-roll upon which the names of the signers of a petition for a local option election must appear to render them competent to sign it is the last comp. ted roll, *i. e.,* the roll upon which the amount due from each taxpayer appears after both county and state boards of equalization have acted.

*Mandamus*—Demurrer—Admissions.
4.   The allegations of fact in an affidavit for a writ of mandate will, as against a general demurrer and motion to quash, be taken as true on appeal.

Local Option Election—*Mandamus*—When Proper Relief.
5.   Where a board of county commissioners, by filing a general demurrer and motion to quash, admitted that in passing upon the sufficiency of a petition for a local option election it had wrongfully eliminated from it the names of a number of qualified persons sufficient to defeat the petition, the presumption that its official duty had been legally performed disappeared, and relief by way of *mandamus* was proper.

   [As to *mandamus* to compel board of canvassers to reassemble and recanvass votes, see note in **Ann. Cas. 1912C, 1257.**]

Same—Supplemental Petitions may be Filed.
> 6. *Held* that in addition to the petition mentioned in section 2041, Revised Codes, as requisite for the calling of a local option election, supplemental petitions may be filed at any time during the course of the board's deliberations until the matter is submitted for final decision.

Same—Petition—Revocation of Withdrawal of Names—*Mandamus.*
> 7. The right to revoke his withdrawal from a petition calling for a local option election—thus restoring the signer to his original position —is not absolute, and should not be enforced by *mandamus.*

*Appeal from District Court, Sheridan County; F. N. Utter, Judge.*

*Mandamus* by the State on the relation of Andrew Fadness against P. J. Eie, F. A. Weinrich and J. C. Timmons, Commissioners of Sheridan County, Montana. From a judgment for defendants on demurrer and motion to quash, relator appeals. Judgment reversed, and cause remanded, and district court directed to overrule the demurrer and motion.

*Messrs. Walsh, Nolan & Scallon,* for Appellant, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

As against a general demurrer and motion to quash, the facts alleged in the affidavit for the writ of mandate will, for the purposes of an appeal from an order dismissing the proceedings, be taken as true. (*State ex rel. Arthurs* v. *Board of County Commrs.,* 44 Mont. 51, 118 Pac. 804.) On the facts set forth in the affidavit, the motion to quash and the demurrer should have been overruled, and the defendants required to answer. (*State ex rel. Stringfellow* v. *Board of County Commrs.,* 42 Mont. 62, 111 Pac. 144; *State ex rel. Hauswald* v. *Ellis,* 52 Mont. 505, 159 Pac. 414; 26 Cyc. 432.)

It was stated by this court in *State ex rel. Lang* v. *Furnish,* 48 Mont. 28, 134 Pac. 297, that withdrawals should be given effect until the final consideration of the matter. Now, the statute being silent on the subject as to the form of the petition and with no limitation as to the time when petitions should be presented, common sense and common justice alike would suggest that where a petition is presented and efforts are made to

get withdrawals from the petition so that its presentation would be rendered nugatory, a petition thus attacked might be reinforced by procuring additional names. And so, likewise, if a withdrawal to a withdrawal was secured, the withdrawing party directing that the signature on the original petition should be given full force and effect, is it not conformable to reason and common sense that full consideration should be given to this request? These two propositions were considered by the supreme court of Kentucky in the case of *Horton* v. *Botts,* 158 Ky. 11, 164 S. W. 352, and decided favorably to the contention we are now making. In that case it was held that the petition was in the nature of a pleading; that the supplemental petition was in the nature of an amendment to the original petition, and that the revocation of the withdrawals should have been allowed.

*Messrs. Norris, Hurd & McKellar* and *Messrs. Babcock & Ellery,* for Respondents, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

The functions of respondents as the board of county commissioners were *quasi* judicial. The quality of their acts may easily be determined from an analysis of the duties imposed upon them in respect of the consideration of said petitions. The more important of them were: (a) To determine the genuineness of the signatures appended to such petitions; (b) to determine the qualifications of the respective petitioners as electors. (*State ex rel. Bogy* v. *Board of County Commrs.,* 43 Mont. 533, 117 Pac. 1062.) Outside of this jurisdiction the same rule is in force. (1 Woolen & Thornton on Intoxicating Liquors, sec. 519; *Ferguson* v. *Board of Suprs.,* 71 Miss. 524, 14 South. 81; *Roesch* v. *Henry,* 54 Or. 230, 103 Pac. 439.) The determination of the qualification of the respective petitioners as electors was a jurisdictional question. (*Steele* v. *State,* 19 Tex. App. 425; *Rawl* v. *McCown,* 97 S. C. 1, 81 S. E. 958.) (c) To determine the qualifications of the respective petitioners as taxpayers. In the determination of this question the respondents were

required to resort only to the last assessment-roll in Sheridan county.   (Sec. 2041, Rev. Codes; *State ex rel. Eagye* v. *Bawden,* 51 Mont. 357, 152 Pac. 761.)   (d) To determine the genuineness of the signatures, qualifications, *etc.,* of the names of the persons appended to the withdrawal° petitions; (e) To determine the total number of tax-paying electors in Sheridan county whose names appeared upon the last assessment-roll; (f) To make an order calling or refusing to call an election based upon conclusions made in the determination· of jurisdictional facts. *State ex rel. Eagye* v. *Bawden,* 51 Mont. 357, 152 Pac. 761, *State ex rel. Buck* v. *Board of Commrs.,* 21 Mont. 469, 54 Pac. 939, and *State ex rel. Jacobson* v. *Board of County Commrs.,* 47 Mont. 531, 134 Pac. 291, seem to be determinative of the proposition that the board in the case at bar exercised *quasi*-judicial functions, and that the findings of the board of which appellant complains were made pursuant to authority vested in the board, but which carried with it no command that the authority be exercised in any specific manner.

The decision of the respondents cannot be controlled by *mandamus.   Mandamus* lies only to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station.   (*State ex rel. Knight* v. *Helena Power & L. Co.,* 22 Mont. 391, 44 L. R. A. 692, 56 Pac. 685; *State ex rel. Gibson* v. *Stewart,* 50 Mont. 404, 147 Pac. 276.)   It does not lie to compel the performance of any act which involves the exercise of discretion.   (*State ex rel. Gibson* v. *Stewart, supra.*) Where the duty to be performed is *quasi* judicial, its performance in any particular way cannot be compelled by *mandamus.* (*State ex rel. Marshall* v. *District Court,* 50 Mont. 289, 146 Pac. 743; *State ex rel. Gravely* v. *Stewart,* 48 Mont. 347, 137 Pac. 854.)

As to withdrawals of withdrawals: In the absence of any showing in appellant's affidavit that the withdrawal of withdrawals petition was presented to the board before it had acted upon the withdrawal petition, appellant is not in a position to

claim that the board violated any duty owed to the petitioners.
(*State ex rel. Lang* v. *Furnish*, 48 Mont. 28, 134 Pac. 297.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

Application for *mandamus*. The affidavit in support of the
application, stripped of immaterial matters, discloses these facts:

On July 10, 1916, a petition was filed with the clerk of Sheri-
dan county, addressed to the board of commissioners, asking
that an election be ordered by the board to letermine whether or
not intoxicating liquors should be sold within the county. The
board convened on July 20 to consider the petition. Between
that date and July 22, and while the board had the petition
under consideration, a supplemental or additional petition was
presented. This the board received and considered with the
original petition. There were in the meantime presented by a
number of signers of these petitions other petitions asking that
their names be omitted from the original and supplemental peti-
tions. Later some of these latter presented still other petitions
requesting that their names be retained in the list of signers
and considered for the purpose of determining the sufficiency
of the original and supplemental petitions. The board there-
upon adjourned until July 31. After having had all the peti-
tions under consideration from that date until August 2, the
board granted the withdrawal petitions, disregarded the peti-
tions retracting the withdrawals, and, concluding that the sign-
ers of the original and supplemental petitions who possessed
the statutory qualifications to sign them were not sufficient in
number, refused to order the election. The board made find-
ings in substance as follows: (1) That the original petition was
signed by 1,289 tax-paying electors; (2) that the supplemental
petition bore the names of 192 tax-paying electors; (3) that the
whole number of tax-paying electors whose names appeared on
both petitions was 1,481; (4) that of these, 457 had withdrawn
their names; (5) that after deducting the names so withdrawn,
there remained upon the original and additional petitions the

names of 1,024 tax-paying electors; (6) that when these petitions were presented to the board there were in the county 3,658 persons who were tax-paying electors; (7) that to authorize the calling of an election as requested, the petitions must have qualified signers to the number of 1,220,or at least one-third of all those who were qualified to sign them; and hence that the petitions did not bear the required number. In addition to the foregoing recitals, the affidavit alleges that the original petition bore the signatures of 1,486 persons who were tax-paying electors, or more than one-third of the electors of the county who were qualified to sign it; that the supplemental petition contained additional signatures, to the number of 208, of persons who were qualified to sign it; that the aggregate of the signers was therefore 1,694; that of the signers of the original petition the board wrongfully omitted from the count 197 names, and from the supplemental petition 16 names, thus reducing the number of qualified signers to 1,481; and that of the 457 persons who requested to have their names withdrawn, 185 retracted the request. It is alleged further that the names of all those who signed the original and supplemental petitions appear upon the assessment-roll for the year 1915, and also upon the official register of voters for the year 1916.

When the board announced its decision, the relator, a resident and tax-paying elector of the county and qualified to sign a petition for an election, applied to the district court for a writ of mandate to compel the defendants to reassemble as a board and order the election. It is demanded that the defendants be required to reassemble and include in the count the names omitted from the signers of the original and supplemental petitions, and also the names of those who retracted their withdrawals therefrom, and that they, as a board, order the election. In answer to the alternative writ, the defendants appeared by general demurrer and motion to quash, on the ground that the facts stated in the affidavit did not warrant relief. The demurrer and motion were sustained, and judgment went for the defendants. The relator has appealed.

1. At the argument the attorney general submitted a motion to dismiss the appeal, for the reason that he had not been served [1] with a copy of the transcript nor with copies of defendants' brief, as required by Rule IX (123 Pac. xii), and subdivisions 2 and 7 of Rule X (123 Pac. xii) of this court. From a technical point of view the motion was well made. Inasmuch, however, as service in both particulars was had before the submission of the motion and the state has suffered no inconvenience by the delinquency, the motion is denied. The delinquency by counsel for the relator was evidently due to oversight. This being so, the dismissal would be without prejudice to another appeal. The granting of the motion would therefore serve no useful purpose.

2. Counsel submit the question, What course must the board have pursued in order to determine the qualifications of the [2] signers of the original and supplemental petitions and the genuineness of their signatures? The application was addressed to the board in pursuance of section 2041 of the Revised Codes. Considering this section in *State ex rel. Eagye* v. *Bawden,* 51 Mont. 357, 152 Pac. 761, we held that the two qualifications which the signers must possess are: (1) That they must be qualified electors, and (2) that they must be taxpayers. That they possess the latter qualification, it was held, must be shown exclusively by the presence of their names upon the last assessment-roll. When this has been ascertained, it must further be determined whether they are qualified electors, or, in the language of the statute, "voters who are qualified to vote for members of the legislative assembly." The latter expression must be understood to be neither more nor less comprehensive than the former, for all persons who possess the qualifications enumerated in section 2, Article IX, of the Constitution are qualified electors. How to ascertain that the signers come within this class, the statute does not point out. That a person is a taxpayer is not an evidence of the fact that he is also a qualified elector, for he may be a nonresident or an alien, or be affected by some other disability. The assessment-roll could not disclose any in-

formation on the subject. So the official register of voters, while it may properly be consulted for such information as it contains, is not conclusive as to who are and who are not qualified electors. A particular name appearing thereon may be that of a person who has removed from the state, or who has died or who has otherwise lost his right to vote. Again, the name of a person may be signed to the petition who is both a taxpayer and a qualified elector within the meaning of the Constitution, and yet his name is not to be found upon the official register. He is none the less a qualified elector and entitled to sign the petition. It is only when the statute requires petitions by electors to initiate proceedings, such as we are now considering, to be signed by registered voters, that the signers must be such. "Registration is no part of the qualifications of an elector and adds nothing to them; it is merely a method of ascertaining who the qualified electors are, in order that abuses of the elective franchise may be guarded against." (*State ex rel. Lang* v. *Furnish*, 48 Mont. 28, 134 Pac. 297.) The statute might have prescribed the requirement, as it does in case of a petition to initiate proceedings to establish a new county (Laws 1915, Chap. 139, p. 301); but, as it does not, an elector whose name is on the last assessment-roll is qualified to sign a petition for all the purposes of this particular proceeding. In *State ex rel. Eagye* v. *Bawden, supra,* referring to the office served by the assessment-roll, this language was used: "The last sentence of section 2041 commands the board to determine the sufficiency of the petition by reference to the last assessment-roll. The provision is exclusive. The board is not authorized to consult any other source of information or to receive evidence which does not appear upon that roll." Taken without reference to the particular point under discussion, the statement is perhaps misleading. It would confine the board to the examination of the assessment-roll only for all purposes. That this is not the import of the excerpt quoted is clear when read in its proper connection. Since the course to be pursued by the board in ascertaining whether the signers are qualified electors is not

pointed out, it may undoubtedly resort to any competent source of information available, including the official register, the tes-. timony of witnesses, and, perhaps the personal knowledge of the individual members. (*State ex rel. Bogy* v. *Board of County Commrs.*, 43 Mont. 533, 117 Pac. 1062; *State ex rel. Lang* v. *Furnish, supra.*)

In view of the foregoing remarks, the allegation in the affidavit that the names of all the petitioners appear upon the official register was not necessary. Nevertheless its presence therein does not impair the relator's title to relief, if the material facts stated warrant it.

3. It will be observed that the affidavit alleges that the names of the signers of the petitions appear upon the assessment-roll for the year 1915. Under section 2545 of the Revised Codes, the assessor is required to have his assessment-book completed on or before the second Monday of July. It must immediately then be delivered to the county clerk. (Sec. 2547.) For the year 1916 the assessor was required to have his book completed on or before July 10, because the second Monday fell on that date. In this connection the inquiry is suggested by counsel for defendants, whether the roll of 1916 or that of 1915 should have been used by the board to ascertain the tax-paying qualifications of the signers of the petitions. The purport of the [3] suggestion is apparent. The statute constitutes the assessment-roll which is latest in date the only evidence by which to determine the tax-paying qualification of the signers of the petition. As all those who were taxpayers in 1915 are not necessarily taxpayers in 1916, the affidavit does not show that the names of the signers were upon the last assessment-roll, and therefore does not state a cause warranting the relief demanded. The suggestion is devoid of merit. That the reference in the statute is to the completed assessment-book, which is the basis for the levy of taxes in the county for any year, is made apparent by noting the steps necessary to make it up in its final form: The assessor must list all property in his county in an assessment-book under appropriate headings. (Rev. Codes, sec. 2543.)

When this has been completed and delivered to the clerk as directed by sections 2545 and 2547, *supra,* the clerk gives notice of the fact by publication, and also that the board of commissioners will meet to equalize the assessments. (Sec. 2547.) The board sits for this purpose from time to time, from the third Monday in July until the second Monday in August. (Sec. 2572.) Its powers and duties in relation to the individual assessments and the changes it may make in them are defined in sections 2573 to 2581. The changes wrought by it must be noted by the clerk and entered on the book in the proper places. (Sec. 2582.) At the conclusion of its sitting the board must fix the rate of taxation for the year. (Sec. 2598.) The clerk then ascertains the gross sum of all the assessments and transmits it to the state auditor and the state board of equalization. (Sec. 2606.) Thereupon the assessments of the several counties, as shown by the several assessment-books, are equalized by the state board of equalization. (Secs. 2583–2592.) Such changes as this board may have made must be noted and entered upon the assessment-book by the county clerk, who must also enter therein the assessments made by the state board upon property assessable only by the state board. (Secs. 2604–2607.) The sum of the corrected assessments of the several counties, with the additions made by the state board of equalization, is the basis for taxation for state purposes at the rate fixed biennially by the legislature. (Sec. 2593.) When the assessments have been equalized and the necessary changes made, the clerk must sum up the values of the different kinds of property assessed to each owner, and also the gross amount of all assessments as fixed by the equalizations. (Sec. 2604.) He must then calculate and extend to the proper column the amount due from each taxpayer for the year, at the combined rates fixed by the county board and the legislature. (Sec. 2608.) The book is then completed and becomes the basis—or the assessment-roll—for the payment of taxes for the current year. In the even-numbered years it must also be used as the basis for the classification of the several counties provided by section 2975. In

view of these considerations it requires no argument to demonstrate that the assessment-book delivered to the clerk on July 10 was only a tentative basis for the levy of taxes for the year 1916, and did not become an assessment-roll until completed by the clerk as above indicated. The roll for the year 1915 was the only one to which reference could be had.

4. For the purposes of this appeal the allegations of fact [4] contained in the affidavit must be accepted as true. (*State ex rel. Arthurs* v. *Board of County Commrs.*, 44 Mont. 51, 118 Pac. 804.) It is alleged that the signers of the two petitions to the number of 1,694 were tax-paying electors. This number includes the names (213) dropped from the petitions. Accepting these allegations as true, it necessarily follows that the action of the board was wrong, whatever may have been the basis of it—whether it concluded that the excluded names were not those of taxpayers, or that they were not electors, or that their signatures were not genuine. Counsel argue, however, that the findings which are set out in the affidavit traverse these allegations, and hence that there is disclosed on the face of the affidavit itself an issue of fact which requires an affirmance of the judgment of the district court. This process of reasoning we cannot appreciate.

It was not necessary that the findings be set out in the affidavit. This was evidently done in order to disclose fully the result of the board's proceedings; but that they were so set out [5] does not impair in any way the force of the allegation that they were without foundation in fact. The truth of them was the ultimate issue tendered by the relator. Instead of meeting the issue as tendered, the defendants were content to admit their falsity and tender an issue of law as to the sufficiency of the allegations impeaching them. How, it may be asked, can findings which have no basis in fact become impregnable the moment they are assailed by one who has been aggrieved by them? If counsel's position is maintainable, then it matters not that the findings were the result of the most arbitrary course by the board; they must nevertheless stand as their own vindica-

tion. The material fact being admitted as true, *viz.*, that the omitted names were the genuine signatures of tax-paying electors, it was to be accepted as true for all purposes. If these signers were taxpayers and qualified voters, there was nothing left for the board but to perform its imperative duty to order the election. It is of no avail for counsel to say that the board was exercising judicial powers, and in support of its action to invoke the aid of the presumption that its official duty was legally performed. The presumption disappears in face of the admitted fact that the board wrongfully eliminated the names of 213 persons who were qualified to sign the petition, and then refused to order the election. That under such circumstances relief will be granted by *mandamus* is no longer open to discussion in this jurisdiction. The following cases, though differing from this one in their facts, are amply sufficient to show that the rule is firmly established: *State ex rel. Stringfellow* v. *Board of County Commrs.*, 42 Mont. 62, 111 Pac. 144; *State ex rel. Arthurs* v. *Board of County Commrs.*, 44 Mont. 51, 118 Pac. 804; *State ex rel. Hauswald* v. *Ellis*, 52 Mont. 505, 159 Pac. 414; *State ex rel. Furnish* v. *Mullendore, ante,* p. 109, 161 Pac. 949.

The original and supplemental petitions were signed by 1,694 persons who were tax-paying electors. Assuming that the board properly excluded the names of all the 457 persons who withdrew, there remain 1,237 qualified signers, or more than one-third of the tax-paying electors in the county. The district court should have overruled the demurrer and motion, and heard the application on its merits.

5. But counsel for defendants contend that the board was [6] without authority to receive and consider the supplemental petition after it had convened on July 20 to consider the original petition. If this contention is sustained and the 457 withdrawals be deducted from the 1,486 signers of the original petition, the remainder is 1,029, or less than the required number. In support of their contention, counsel rely with apparent confidence on the decision in *State ex rel. Lang* v. *Furnish, supra.* While they admit that the New Counties Act (Laws 1913, Chap.

133), which was under consideration in that case, contains an express provision prohibiting the filing of petitions in any form after the date set for the hearing, they insist that though section 2041, *supra,* does not contain any such express provision, yet since the order must be made "upon application by petition," the implication obtains that the petition, the basis of the order, must be complete when taken up for examination, and cannot thereafter be aided by additional signatures by way of a supplemental petition. Inasmuch as the statute does not expressly prohibit the presentation of supplemental petitions, we are not disposed to give it the force which counsel would have us give it. True, a sufficient petition is a necessary prerequisite to jurisdiction by the board to order the election. So a sufficient complaint is necessary to enable a court to grant relief in an ordinary action. This necessity does not preclude the court from permitting amendments by an addition to the pleading of omitted material allegations at any stage of the proceeding, in order to furnish a basis for the relief demanded. The statute *supra* does not provide for an adversary hearing; but assume that this is implied, it seems not out of place to make the additional assumption that the implication is equally as strong that the hearing shall be conducted according to the analogies of ordinary actions. But whether these implications are permissible or not, in view of the fact that proceedings had by a board of commissioners in such cases are always more or less informal, we can see no legal objection to the reception of supplemental petitions at any time during the course of its deliberations, until the matter is submitted for final decision. This view relieves the proceeding of all purely technical features, and at the same time requires the board to observe, and be controlled by, the substance of the application rather than its form. We know of no authority directly in point. The holding in the case of *Horton* v. *Botts,* 158 Ky. 11, 164 S. W. 352, cited by counsel for relator, is more nearly in accord with that in *State ex rel. Lang* v. *Furnish, supra,* in that the Kentucky court held that under a local option statute, supplemental petitions may be filed

at any time before the date set for the hearing is fixed, and not thereafter.   It does lend support to the view that the petition is in the nature of a pleading, and in order to furnish the juris-dictional fact, *viz.,* a sufficient number of qualified signers, it may be amended by supplemental petitions disclosing it.

6. Counsel on both sides correctly assume that it was the duty [7] of the board to permit such of the petitioners as desired to do so to withdraw their names from the petition.   (*State ex rel. Lang* v. *Furnish, supra.*)   Counsel for the relator con-tend that it was also incumbent upon the board to permit those who had withdrawn to revoke their withdrawals and to be counted as petitioners.   In the case last cited, after declaring the right of a signer of the petition to withdraw, this court said: ''Indeed, the above rule is a necessary inference from the very nature of the right of petition, and of necessity applies, not merely to the petitions themselves, but to the withdrawals, so as to authorize the withdrawal of a withdrawal.''   This re-mark had reference to a petition for the exclusion or with-drawal of territory from a proposed county, and was intended to apply only to a withdrawal of such a petition.   As is ap-parent from the context, it had no reference to a revocation by petitioners of a withdrawal of their names from the petition and their reinstatement as original signers.   Now, it may be conceded that the right of petition from its nature implies the right of withdrawal, because, upon further discussion and more mature reflection as to the desirability of the accomplishment of the purpose sought by the petition, the petitioner may change his conviction; yet it is not readily apparent that after he has once signified to the body to whom the petition is addressed that his name is withdrawn, he has a clear legal right to revoke his withdrawal and be restored to his original position.

It was held by the court in *Horton* v. *Botts, supra,* that the withdrawal may be revoked at any time before it has been acted upon by the petitioned body, restoring the petitioner to his original position.   It will be observed that the revocation had been permitted by the county court, and the propriety of it was

afterward drawn in question in a contest of the election ordered and held upon the basis of the petition as finally considered. The court held in effect that it was within the discretion of the county court to which the petition was addressed to pursue the course it did. In a dissenting opinion, however, Mr. Justice Hannah denied the right of withdrawal in the first place, giving his reason therefor as follows: "There is nothing obscure nor complicated about a petition for a local option election. Every man who signs such a petition knows its import. Because of that knowledge, he should not be permitted to play fast and loose with the court and with the other signers. When the petition is filed, his right to withdraw therefrom should terminate. To hold otherwise is to pervert the legislative intent to add to the statute that which it does not contain, and to open the door to treachery, corruption and fraud." We think the considerations adduced by Mr. Justice Hannah fully justify the conclusion that the right of revocation is at best not absolute, and ought not to be enforced by *mandamus.*

The judgment is reversed and the district court is directed to overrule the demurrer and motion.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SANNER: I concur in the result; but I am not convinced that supplemental petitions and withdrawals should be considered while "withdrawals from withdrawals," so called, before the board at the same time, should be ignored. Difficulties exist in the formulation of any rule for so informal a proceeding, though the statute seems to suggest that the petition should be judged as of the date it is presented, without additions or subtractions signified after that time. If, however, the object of the proceeding is to ascertain whether the requisite proportion of the taxpaying electorate favor the purposes of the petition at the time it is finally submitted, and this is to be gleaned from the petition as aided by additions and subjected to deductions for withdrawals up to that time, it seems to me

that the withdrawals should be subject to elimination for retractions from them.   Supplemental petitions, withdrawals and retractions from withdrawals are all outside the letter of the statute, and if the first two should be considered as factors in determining how many qualified petitioners remain at the time of submission, I think the third should also be considered, because the number of withdrawals can be known only by knowing how many stand to their withdrawals.

