AINSWORTH, RESPONDENT, *v.* McKAY, COUNTY CLERK AND
RECORDER, APPELLANT.

(No. 4,306.)

(Submitted November 2, 1918.    Decided November 4, 1918.)

[175 Pac. 887.]

*Counties—Removal of County Seat—Petition—Sufficiency—*
*Test—Board of County Commissioners—Powers.*

Removal of County Seat—Petition—Sufficiency—Test.
    1.  *Held,* under section 2852, Revised Codes, that the board of county
    commissioners is limited in its investigation of the sufficiency of a
    petition for the removal of the county seat to a comparison of the
    names appearing thereon with the poll-books to ascertain whether
    the signers are voters, and with the assessment-roll, whether they
    are taxpayers, and may not, therefore, eliminate from the petition
    names of persons who have ceased to be legal voters or taxpayers.

Board of County Commissioners—Powers.
    2.  The board of county commissioners possesses only such author-
    ity as is conferred upon it expressly, and such additional authority
    as is necessarily implied from that which is granted expressly.

    [As to liability of county boards to private individuals, see note
in 95 Am. St. Rep. 80.]

*Appeal from District Court, Sanders County, in the Fourth
Judicial District; A. P. Stark, Judge of the Sixth District,
presiding.*

ACTION by A. S. Ainsworth against John F. McKay, as County
Clerk and Recorder in and for the County of Sanders, State of
Montana, and others.    Judgment for plaintiff, and defendants
appeal.    Affirmed.

*Mr. H. C. Smith* and *Mr. J. M. Self,* for Appellants, submitted
a brief; *Mr. Smith* argued the cause orally.

*Mr. H. H. Parsons,* for Respondent, argued the cause orally.

Opinion—PER CURIAM.

The one question presented is whether the petition for the
removal of the county seat of Sanders county is sufficient to

Authorities discussing the question on what basis majority essential
to adoption of proposition for change of county seat is to be computed,
see note in 22 L. R. A. (n. s.) 478.

authorize the commissioners to submit to the electors the question of removal. The cause was tried to the lower court upon an agreed statement of facts, the material portion of which is that the commissioners disregarded the names, on the poll-books and assessment-roll, of all persons who, since those records were made up, had ceased to be legal voters in the one instance, or *ad valorem* taxpayers in the other, and, with these eliminations made, held the petition to be sufficient. It. is agreed that, if the commissioners were authorized to make such eliminations,' their conclusion is correct, but, if they were not so authorized, then the petition is insufficient. The trial resulted in a judgment for plaintiff, and defendants appealed.

Section 2851, Revised Codes, provides for a petition as the
[1] means by which proceedings for the removal of a county seat are initiated. Section 2852 provides: "If the petition is signed by a majority of the taxpayers of such county, the board must at the next general election submit the question of removal to the electors of the county; Provided that the term 'taxpayers' used in this section shall be deemed to mean '*ad valorem* taxpayers,' and that for the purpose of testing the sufficiency of any petition which may be presented to the county commissioners, as provided in this section, the county commissioners shall compare such petition with the poll-books in the county clerk's office constituting the returns of the last election held in their county, for the purpose of ascertaining whether such petition bears the names of a majority of the voters listed therein; and they shall make a similar comparison of the names signed to the petition with those appearing upon the listed assessment-roll of the county for the purpose of ascertaining whether the petition bears the names of a majority of the *ad valorem* taxpayers as listed in said assessment-roll; and if such petition then shows that it has not been signed by a majority of the legal voters of the county who are *ad valorem* taxpayers thereof, it shall be deemed insufficient, and the question of removal of the county seat shall not be submitted."[2]

If the terms "legal voters of the county who are *ad valorem* taxpayers thereof," as used in the concluding sentence above are to be given their literal meaning, then the commissioners would be required to eliminate from their consideration of the poll-books the names of all persons who had died, removed, or for any other reason had lost the right to vote, and they would be required to add to the number remaining all new voters who had acquired the right; for it has been determined repeatedly that registration is not a qualification to vote, but a mere safeguard of the purity of the ballot. (*State ex rel. Lang* v. *Furnish*, 48 Mont. 28, 134 Pac. 297; *State ex rel. Fadness* v. *Eie*, 53 Mont. 138, 162 Pac. 164.) The same rule would apply in the use of the assessment-roll; but that it was not the purpose to use the terms "voters" and "taxpayers" in this broad sense is apparent, and is conceded by both parties, we understand.

What function do the poll-books and assessment-roll perform in the determination of the sufficiency of a petition for county seat removal? The question is answered by section 2852 itself. For the purpose of testing the sufficiency of the petition, the commissioners shall compare the petition with the poll-books constituting the returns of the last election held in the county, for the purpose of determining whether the petition bears the names of a majority of the voters listed therein, and they shall likewise compare the petition with the assessment-roll, to ascertain whether the petition bears the names of a majority of the *ad valorem* taxpayers listed on that roll. The language is significant. The sufficiency of the petition is to be *tested* by comparing it with the poll-books and assessment-roll. "Testing" means the act of proving. Test: To put to proof; to prove the truth, genuineness, or quality of, by experiment or by some principle or standard. (Webster's International Dictionary.) "Test" as a noun means: An examination made for the purpose of proving or disproving some matter in doubt; a criterion or standard of judgment. As a verb it means: To subject to conditions that disclose the true character of a thing. (Standard Dictionary.)

The legislature, therefore, made of the poll-books and assess-ment-roll a standard or measure by which the sufficiency of the petition is to be determined. The petition is merely a prelim-inary means by which the election machinery is set in motion. The determination of its sufficiency or insufficiency adjudicates no private rights; establishes no precedent; settles no principles. (*State ex rel. Lang* v. *Furnish,* above.)

In the absence of constitutional restrictions the legislature was free to prescribe any test it might choose (*State ex rel. Eagye* v. *Bawden,* 51 Mont. 357, 152 Pac. 761), and it chose to select the poll-books as the standard by which the board should determine the number of voters, and the assessment-roll as the criterion by which the number of *ad valorem* taxpayers should be ascertained. In other words, for the purpose of this pre-liminary step only, the statute designates as a voter one whose name is on the poll-books, and an *ad valorem* taxpayer one whose name is on the assessment-roll, and who is assessed for property.

As if to leave no doubt that the poll-books and assessment-roll constitute the sole criterion for testing the sufficiency of the petition, the statute, after directing that the petition shall be compared with each, provides that, if then [after the compari-son is made] the petition shows that it has not been signed by a majority of the legal voters who are *ad valorem* taxpayers, it shall be insufficient, and the question of removal shall not be submitted. The evident purpose of section 2852 is to provide a simple and certain method by which the board shall determine the sufficiency of the petition—a method freed from all the un-certainties of an investigation founded upon human testimony. A reference to these public records, made and kept under the sanction of official oath, was deemed sufficient for the purposes of this preliminary proceeding.

The board of county commissioners is a specially constituted [2] tribunal, possessing only such authority as is conferred upon it expressly, and such additional authority as is neces-sarily implied from that which is granted expressly. (*State ex rel. Lambert* v. *Coad,* 23 Mont. 131, 57 Pac. 1092; *State ex*

*rel. Gillett* v. *Cronin,* 41 Mont. 293, 109 Pac. 144.)    The authority to go beyond the poll-books and assessment-roll to ascertain whether the petition is signed by a sufficient number of persons is not granted in express terms; neither can it be implied from the power which is granted.    On the contrary, the language of section 2852 indicates a purpose to confine the board to the particular sources of information mentioned, as they appear in the public records of the county.

No question is raised as to the right of the commissioners to determine the genuineness of the signatures to the petition, or the identity of the persons whose names appear thereon, with the persons whose names appear on the poll-books or on the assessment-roll.

Section 2041, Revised Codes (the local option statute), provides: ''The county commissioners must determine on the sufficiency of the petition presented, by the last assessment-roll of the county.''    This was held to constitute the assessment-roll the exclusive standard by which to determine whether the petition was signed by the requisite number of taxpayers.    Concerning it this court said: ''The board is not authorized to consult any other sources of information or to receive evidence which does not appear upon the roll.''    (*State ex rel. Eagye* v. *Bawden,* above, affirmed in *State ex rel. Fadness* v. *Eie,* above.)

The language employed by this court in *State ex rel. Stringfellow* v. *Board,* 42 Mont. 62, 78, 111 Pac. 144, 149, is to be understood in view of the record made in that case.    It was there said: ''The essential requisite of a petition for the removal of a county seat is that it shall be signed by a majority of the legal voters of the county who are *ad valorem* taxpayers thereof.''    With the limitation placed upon the definition of ''voters'' and ''taxpayers'' above, we reaffirm this statement as a correct exposition of the law.

The New Counties Act (Laws 1913, Chap. 133) considered in *State ex rel. Lang* v. *Furnish,* above, differs so materially from section 2852 that the construction placed upon the former cannot apply to the latter.

Our conclusion is that the commissioners were not authorized to make the eliminations which were made, and under the agreed statement of facts it follows that the petition in question is insufficient, and that the judgment of the district court should be, and it is, affirmed.

*Affirmed.*

