STATE ex rel. FARAGHER et al., Appellants, v. MOUL-
TON et al., Respondents.

(No. 5,298.)

(Submitted June 26, 1923.  Decided July 10, 1923.)

[216 Pac. 804.]

*Mandamus—New Counties—Petitions—Signatures—Withdrawal
from Withdrawal—Protests—Time for Filing.*

New Counties—Protests—Time for Filing.
    1.  Under section 4393, Revised Codes of 1921, petitions for the
exclusion of territory and protests against the exclusion must, but
protests against the creation of a new county need not, be filed
at least one day before the date set for hearing to entitle them to
consideration by the board of county commissioners, it being suffi-
cient if such latter protests are filed on or before the time fixed for
the hearing.
Same—Petitions—Withdrawal from Withdrawal—*Mandamus.*
    2.  *Held,* that the right of one who had signed a petition for the
creation of a new county and then signed a withdrawal of his name
therefrom, to thereafter and before the hearing withdraw from the
withdrawal is not absolute, and therefore no clear legal duty being
imposed upon the board of county commissioners to give effect to
the withdrawal from the withdrawal, *mandamus* does not lie to
compel it to do so.

*Appeal from District Court, Fergus County; Rudolf Von
Tobel, Judge.*

Application for a writ of *mandamus* by the State of Mon-
tana, on the relation of Archibald H. Faragher, against B. F.
Moulton and others, constituting the Board of County Com-
missioners of Fergus County, Montana.  From a judgment
dismissing the application, relator appeals.  Affirmed.

*Messrs. Geis & Wiedman* and *Mr. Ralph J. Anderson,* for
Appellant, submitted a brief; *Mr. Homer E. Geis* and *Mr.
Anderson* argued the cause orally.

*Mr. Edgar J. Baker, Messrs. Belden & DeKalb* and *Mr.
Merle C. Groene,* for Respondents, submitted a brief; *Mr. H.
Leonard DeKalb* argued the cause orally.

220· State ex rel. Faragher *v.* Moulton et al. [June T. '23

[68 Mont. 219.]

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On April 19, 1922, a petition in due form was filed with the county clerk of Fergus county, praying for the creation of Petroleum county from a portion of Fergus county. The clerk appointed May 18, 1922, at 10 o'clock A. M., as the time for hearing the petition, and gave the notice required by· law. About 4:45 P. M. on May 17, certain petitions for the exclusion of territory from the proposed new county were filed, and at the same·time a protest by R. W. Blake against the creation of the new county was also filed. On the morning of May 18, before the hearing, a paper designated, "Withdrawal from Withdrawal from Petition for the Creation of the Proposed New County of Petroleum," bearing the signatures of 109 persons, was filed with the clerk, and thereafter, and before the hearing, another paper designated "Withdrawal" and signed by a large number of persons was also filed.

The board of county commissioners proceeded with the hearing, and at the conclusion found that there were 1,319 persons residing within the boundaries of the proposed new county who were qualified electors whose names appeared upon the registration lists as having voted at the last preceding general election. The board deducted from the number of qualified signatures attached to the petition for the creation of the proposed county, the number of qualified signatures attached to the "withdrawal" petition, and then found that there were but 685 qualified signatures remaining on the original petition, or less than fifty-eight per cent of the number of qualified electors within the proposed new county whose names appeared upon the official registration lists as having voted at the last preceding general election, and accordingly dismissed the petition and refused to proceed further. Thereafter an application was made to the district court for a writ of *mandamus* to compel the board to rescind the order, find that the petition for the creation of the proposed new

county contained the genuine signatures of at least fifty-eight per cent of the persons within the proposed county who were qualified to sign, and to make the proper order and pass the appropriate resolutions calling an election upon the question of the creation of the proposed county, *etc.* The board appeared by general demurrer, which after a hearing was sustained and the applicant for the writ, electing to stand upon his affidavit, suffered a judgment of dismissal to be entered and appealed.

In the application for the writ the only complaints made against the board are: (1) That it considered the Blake protest; (2) that it failed to disregard the exclusion petitions; and (3) that it failed to give effect to the withdrawals from the withdrawals.

1. The Blake protest did not do more than call the attention of the board to matters which it was required by law to consider in the absence of a protest. Among other things, the protest emphasized the fact that the petition for the creation of the proposed new county did not contain the required number of signatures of persons qualified to sign. The order of the board discloses that it was upon the determination of that question alone that the petition for the creation of the proposed new county was denied. Section 4393, Revised Codes of 1921, commands the board to determine "whether the said petition contains the genuine signatures of at least fifty-eight per cent of the qualified electors of the proposed new county as herein required." If the decision of the board was correct, it is altogether immaterial whether it noticed the Blake protest or did not.

But counsel for appellant err in assuming that a protest [1] against the creation of a new county must be filed at least one day before the date set for the hearing. Section 4393 provides: "At the time so fixed for said hearing, the board of county commissioners shall proceed to hear the petitioners and any opponents and protestants upon the petition or protests filed on or before the time fixed for the hearing." Coun-

sel for appellant place reliance upon the next sentence in the section; but it is manifest that it refers only to petitions for exclusion of territory and protest against such exclusion. The language of the sentence is not well chosen, but, if the contention of counsel for appellant be adopted, the two consecutive sentences in the same section would be rendered contradictory —a result which will not be reached if avoidable.

2. In the affidavit for the writ it is alleged that the board "illegally, wrongfully, arbitrarily, and in disregard of their duty, failed, neglected and refused to disregard, reject and deny the said petitions for the exclusion of territory"; but the order of the board, which is made a part of the application, dicloses that the board did not consider the exclusion petitions at all, but refused to proceed solely upon the ground that the petition for the creation of the proposed new county did not contain a sufficient number of qualified signatures. Indeed, it is not alleged that the board did give any consideration to the exclusion petitions or ever acted thereon, and this ground of complaint is without merit.

3. The principal contenton is made over the action of the [2] board in deducting from the number of qualified names on the original petition the total number of qualified signatures attached to the withdrawal petition. It is the theory of appellant that before the board proceeded to the hearing, 109 qualified signers who had asked to have their names withdrawn from the petition for the creation of the county had withdrawn their signatures from the withdrawal; hence they were to be counted as qualified signers of the original petition, and if they had been so counted the board would have been compelled to find that the petition for the creation of the proposed county contained the genuine signatures of 794 qualified signers, or more than the fifty-eight per cent required by law, so that the question in its simplest form is this: May one who has signed a petition for the creation of a new county and then signed a withdrawal of his signature, thereafter, and before

the hearing, withdraw from the withdrawal and thereby be entitled to have his name counted upon the original petition?

In support of their contention that the 109 names should have been counted as signatures to the original petition, counsel for appellant cite *Hoffman* v. *Nelson,* 1 Neb. Unof. 215, 95 N. W. 347, *State ex rel. Streissguth* v. *Geib,* 66 Minn. 266, 68 N. W. 1081, and *State ex rel. Lang* v. *Furnish,* 48 Mont. 28, 134 Pac. 297. The decision in *Hoffman* v. *Nelson* supports counsel's contention. It was there held that one who had signed a petition for an election upon the question of the removal of a county seat and thereafter signed a withdrawal of his signature, might revoke the withdrawal before action was had upon the petition. It is said that there is not any statute in Nebraska reflecting upon the subject, and the only authority cited in support of the conclusion is the Minnesota case above. In *State ex rel. Streissguth* v. *Geib* the facts were that certain petitioners who had signed a petition for a county seat removal thereafter executed a power of attorney authorizing their attorney in fact to strike their names from the original petition. Before action was taken, however, they revoked the power of attorney, but, notwithstanding this fact, the county commissioners permitted the attorney in fact to strike the names from the petition. The court held, properly, that the grantors of the power of attorney had the right to revoke it before it was acted upon, and after it was revoked the attorney in fact had no authority to exercise the power. In *State ex rel. Lang* v. *Furnish* there was involved the question of the right of signers to petitions for the exclusion of territory from the proposed new county of Fallon to withdraw their names from the petitions prior to final action by the board. In disposing of the question Mr. Justice Sanner said: "We think the rule well established that, in the absence of legislative expression to the contrary, signers of a petition have an absolute right to withdraw therefrom at any time before final action thereon." The correctness of the rule thus stated cannot be open to controversy, but the learned Justice, after disposing of the ques-

tion before the court effectively; added the following: "Indeed, the above rule is a necessary inference from the very nature of the right of petition, and of necessity applies, not merely to the petitions themselves, but to the withdrawals, so as to authorize the withdrawal of a withdrawal." Since the right to withdraw from a withdrawal was not before the court and was not involved in the controversy to any extent whatever, the added expression was purely *dictum.*

In *State ex rel. Fadness* v. *Eie,* 53 Mont. 138, 162 Pac. 164, there was presented directly the question now before us—that is, the right of one who had signed a petition for calling a local option election and then signed a withdrawal therefrom, to withdraw his withdrawal and have his name counted as upon the original petition. This court, after referring to the decision in *State ex rel. Lang* v. *Furnish* and pointing out the question therein for decision, held that the right of one to withdraw from a withdrawal "is at best not absolute and ought not to be enforced by *mandamus.*"

It is conceded, as it must be, that when *State ex rel. Lang* v. *Furnish* was decided, our legislature had not made any pronouncement upon the subject of the right of a petitioner to withdraw therefrom, nor had it made any declaration upon the subject of the right to withdraw from a withdrawal. The original New Counties Act (Chap. 112, Laws 1911), with the amendments (Chap. 133, Laws 1913), was repealed in 1915 (Chap. 53, Laws 1915), and another statute upon the same subject was enacted (Chap. 139, Laws 1915). In the Act of 1915 for the first time reference is made to the right of withdrawal, as follows: "No withdrawals of signatures to the original petition for the creation of a proposed county shall be filed or considered which have not been filed with the county clerk on or before the date fixed for the hearing." (Sec. 2.) That provision has remained the law since, and is the only legislative declaration upon the subject. (Chap. 226, sec. 2, Laws 1919; sec. 4393, Rev. Codes 1921.) While this provision does not in terms prohibit a withdrawal from a withdrawal, it

does give recognition only to the right to withdraw from the original petition, and may be said fairly to indicate a legislative intent that the right shall not be extended further, upon the familiar maxim, *expressio unius est exclusio alterius.* In any event, we are satisfied with the correctness of the conclusion announced in *State ex rel. Fadness* v. *Eie,* above, and since there was not imposed upon the board the clear legal duty to give effect to the withdrawals from the withdrawals, *mandamus* will not lie in this instance. (*State ex rel. La France Copper Co.* v. *District Court,* 40 Mont. 206, 105 Pac. 721.)

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.