[No. 2176]

## PACIFIC LIVESTOCK COMPANY (A CORPORATION), APPELLANT, *v.* MASON VALLEY MINES COMPANY (A CORPORATION), RESPONDENT.

[153 Pac. 431]

1. APPEAL AND ERROR—"MOOT CASE"—DISMISSAL.
   Where, pending appeal from judgment sustaining demurrer to the complaint in an action to enjoin a nuisance, defendant built its plant and operated it for three years, without any perceptible harm to plaintiff's lands, the appeal would be dismissed as embodying a "moot case," one seeking to determine an abstract question which does not rest upon existing facts or rights, since the cause of action of plaintiff's complaint, if any was alleged, was based upon a threatened injury to its lands from proposed action which did not in fact follow such action.

APPEAL from the Eighth Judicial District Court, Lyon County; *T. C. Hart,* Judge.

Action by the Pacific Livestock Company against the Mason Valley Mines Company. Judgment for defendant, and plaintiff appeals. **Appeal dismissed.**

*Edward F. Treadwell,* for Appellant:

Public-service corporations are liable for nuisances created in the operation of their business. (*Louisville-*

*Nashville Terminal Co.* v. *Lellyette,* 1 L. R. A. n. s. 49; *B. & P. Ry. Co.* v. *Fifth Baptist Church,* 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739; *Sammons* v. *Gloversville,* 175 N. Y. 346, 67 N. E. 622; *Johnston* v. *Providence & S. R. Co.,* 69 N. Y. Supp. 193; *Reighard* v. *Flynn,* 189 Pa. 355, 43 L. R. A. 502.)

A public-service corporation is not exempted from liability if it negligently or carelessly permits noxious and poisonous fumes to be discharged from its property onto that of its neighbors. (*Mandelbaum* v. *Russell,* 4 Nev. 551.)

Equity will restrain a threatened nuisance where the nuisance is actually imminent and where such nuisance will do irreparable damage to property or seriously menace life or health, and a demurrer will not lie to a complaint alleging such a threatened nuisance. (*State of Missouri* v. *State of Illinois,* 108 U. S. 208, 45 L. Ed. 497; 29 Cyc. 1222; *Wahle* v. *Reinbach,* 76 Ill. 322, 326; *Romano* v. *Birmingham Ry. Co.,* 62 South. 677; *Pierce* v. *Gibson Co.,* 64 S. W. 33; *Miley* v. *A'Hearn,* 18 S. W. 529; *Brew* v. *Van Deman,* 53 Tenn. 433, 440; *Eckels* v. *Weibley,* 81 Atl. 45; *Aldrich* v. *Howard,* 7 R. I. 87; *Wier's Appeal,* 74 Pa. St. 230; *Attorney-General* v. *Steward,* 21 N. J. Eq. 340; *Vaughn* v. *Law,* 20 Tenn. 123.)

*Brown & Belford,* for Respondent:

The public interest in the encouragement and protection of the mining industry of Nevada is so great that no person may prevent its prosecution, or secure its abatement, any more than one can abate the public interest in the mining industry, and for whatever damage may be directly inflicted the remedy of compensation alone is provided, and this remedy is due process of law. The right to engage in any occupation, or to prosecute a business which is a public use, or in which the public has an interest, carries with it, as an inseparable incident thereof, the further consequential right to such privileges as may be necessary for carrying on the occupation or business in accordance with the usual methods and means pertaining to it. The right itself being given, all things

necessary to its exercise or enjoyment go with it. (*Fiske* v. *Framington*, 12 Pick. 30; *London Railroad Co.*, v. *Truman*, 1 App. Cas. 45; *Brown* v. *Humphrey*, 109 N. W. 714–717; *Hauck* v. *Pipe Line Co.*, 26 Atl. 644; *Vogt* v. *City*, 110 N. W. 603.)

What the legislature declares to be lawful cannot be a nuisance, unless through negligence and want of due care. (*Randall* v. *Jacksonville St. Ry. Co.*, 19 Fed. 409; *State* v. *Louisville & N. Ry. Co.*, 86 Ind. 114; *Chope* v. *Detroit Co.*, 37 Mich. 195; *Gray* v. *Patterson*, 60 N. J. Eq. 385; *Crofford* v. *Alabama Ry. Co.*, 48 South. 366; *Southern Ry. Co.* v. *Albes*, 45 South. 234; *Simonds* v. *Telephone Co.*, 72 Atl. 175; *Farrell* v. *Old Town*, 67 Me. 72; *Winship* v. *Enfeld*, 42 N. H. 197; *Steiner* v. *Phila. T. Co.*, 19 Atl. 491; *A. T. & S. F. R. R. Co.* v. *Armstrong*, 80 Pac. 978.)

The neglect of a person to perform a legal duty which he owes to another is never actionable under any circumstances until such neglect as the proximate cause thereof results in damage to the person to whom the legal duty is due. (3 Suth. Code Pl., sec. 4277.)

By the Court, NORCROSS, C. J.:

This is an appeal from a judgment following an order sustaining a demurrer to the plaintiff's complaint. The complaint is in the form of a bill in equity to enjoin an alleged threatened injury to plaintiff's agricultural land by poisonous fumes, which it is alleged will be discharged from defendant's smelter. The demurrer was general, and upon the grounds that the complaint "does not state facts sufficient to constitute a cause of action" or "to entitle the plaintiff to the injunctive relief prayed for." The complaint, after alleging that plaintiff and defendant are corporations, the former organized under the laws of California, and the latter under the laws of Maine, and that plaintiff is the owner of a certain tract of agricultural and grazing land comprising about 20,000 acres and situate in Mason Valley and embraced within townships 13, 14, and 15 north, range 25 east, and sections 14 and 15 north, range 26 east, proceeds to allege in substance as follows: The ownership by the

defendant of certain other tracts of land in township 15 north, range 25 east, therein described, upon which it is building, and threatening to build, a smelter for the treatment of copper and other ores from the various mining centers of Nevada, including Tonopah, Goldfield, and Mason, and that upon the completion of the smelter it will be operated to smelt such ores as may be brought to it for that purpose. That the operation of the smelter will result in discharging into the atmosphere fumes containing sulphur dioxide and arsenious acid and other noxious gases and substances, which by the atmosphere will be carried to the property of the plaintiff, and by settling thereon will cause the vegetation to be damaged and destroyed. That the smelter is within three miles of a portion of the lands of the plaintiff and that the fumes will be carried 15 to 20 miles from the smelter and by reason of the destruction of vegetation will destroy the usefulness and value of the plaintiff's lands. That the defendant knows: (a) the character of the fumes to be discharged from its smelter; (b) that other smelters similarly constructed have killed the vegetation surrounding them for a distance of from 15 to 20 miles; (c) that a smelter so constructed and at such a place will discharge poisonous substance upon the plaintiff's lands and destroy their vegetation, to the great and inestimable damage of the plaintiff and of its lands. That the damage caused by the defendant by reason of the matters and things alleged in the bill of complaint will exceed the sum of $200,000, and that plaintiff has no plain, speedy, or adequate remedy at law. The plaintiff then prays for the issuance of an injunction to restrain defendant from carrying on or operating its smelter or from smelting ores therein or proceeding with the work of the construction thereof; that said smelter and its operation be adjudged to be a nuisance to plaintiff's lands and that the operation thereof may be forever enjoined and restrained. There is also incorporated in the bill of complaint a prayer for an injunction *pendente lite* to restrain the further

construction of the smelter. The complaint was filed December 13, 1911, and the demurrer December 23, 1911. The order sustaining the demurrer was filed January 2, 1915.

From the opinion of the trial judge, embodied in the transcript on appeal, we quote the following excerpt as expressing the views of the judge of the court below upon the law of the case:

"It does seem to me, therefore, that before the complaint in this action can be held to be good, allegations of damage having occurred — not problematical damage — must be averred. Undoubtedly defendant corporation would be liable to plaintiff if it, defendant, created a nuisance which injured plaintiff's property. But this condition does not exist here. That which the law authorizes is not a nuisance, and the complaint here does not in any wise charge, either that the plaintiff has been injured at all, nor that the defendant has committed any trespass or caused any injury."

The briefs of counsel, both for appellant and respondent, disclose legal contentions at variance with the views expressed by the learned trial judge. It is the contention of counsel for appellant that the court below did not go far enough, and should have held that allegations of threatened injury were sufficient to constitute a cause of action and to entitle plaintiff to equitable relief by way of injunction. Counsel for respondent contends that the judge's decision went too far in holding that there could be any liability for damage upon the part of defendant smelter company in the absence of negligence, no matter what injury it caused. The contention of counsel for defendant is substantially correctly stated in appellant's opening brief as follows:

"First — That in the State of Nevada mining and smelting have been declared a public use, and the paramount interest of the state, and the right to condemn private property, under the process of eminent domain has been granted in respect thereto.

"Second — That such a smelter may therefore be

established in the midst of the most highly developed agricultural section of the state, and there discharge in unlimited quantities sulphur dioxide and arsenious acids upon the adjacent lands, entirely destroying the same and all agricultural products thereon, and for such destruction the owner has no redress, either by way of damages or by way of injunction."

It thus appears that this court is asked to decide a question of law of the greatest importance, not only to the parties to this controversy, but to the entire people of this state. The two leading industries of the state— agriculture and stock-raising on the one hand and the mining industry on the other—are tremendously interested in the sustaining of either of the legal contentions presented. If the contention of counsel for appellant is determined to be the law, owners of agricultural land which might be injured by poisonous fumes and gases emitted from a smelter may enjoin the threatened operation of a smelter in absence of the smelter company condemning the land alleged to be affected and paying to the owners the value thereof. Upon the other hand, if the contention of counsel for respondent is sustained in its entirety, a smelter may be placed anywhere that will best suit the convenience of its owners, and its fumes may completely destroy the richest agricultural section of the state, and there is no remedy for persons thus injured either by injunction or by way of damages for loss sustained. Commenting at length upon the importance of the legal questions presented upon the face of the record, counsel for respondent, in part, says:

"The relief sought by the plaintiff will, at once, invoke the most earnest attention of the court because the importance of its granting, or refusal, is fraught with consequences whose far-reaching effect it is impossible to exaggerate. If the defendant were alone involved, or if the results of the decision in this case were to be confined to its immediate parties, we might approach the solution of the questions to be determined with a feeling of confidence, untempered by considerations of

the great public interests actually affected. The vision of the court, however, must extend beyond the lands and smelters, which are here in question, to those other lands and smelters which may be found to lie at the very foundation of the prosperity of a great people. The litigation embraces, not only the immense holdings of Miller and Lux and the mines and smelters of Mason Valley, but its ramifications include the principles which may hereafter be found to govern and control the industrial activities of the state."

Ought this court to determine questions of the importance above indicated unless there is presented to the court a controversy between the parties, based upon facts actually existing or alleged to exist? This and other courts have frequently refused to determine questions presented in purely moot cases. Cases presenting real controversies at the time of their institution may become moot by the happening of subsequent events. (*Wedekind* v. *Bell,* 26 Nev. 395, 69 Pac. 612, 99 Am. St. Rep. 704.)

"A moot case is one which seeks to determine an abstract question which does not rest upon existing facts or rights." (*Adams* v. *Union R. Co.,* 21 R. I. 134, 140, 42 Atl. 515, 44 L. R. A. 273.)

See, also, *Duggan* v. *City of Emporia,* 84 Kan. 429, 114 Pac. 235, 239, Ann. Cas. 1912A, 719; *State* v. *Dolley,* 82 Kan. 533, 108 Pac. 846; *Ex Parte Steele* (D. C.) 162 Fed. 694, 701; 27 Cyc. 911.

We think there is nothing before the court at the present time but a moot case. The complaint in question was filed at the time of or prior to the construction of respondent's smelter. The cause of action, if any was alleged (the controversy sought to be determined), was based upon a threatened injury to plaintiff's lands. Between the time of the institution of the suit and the decision upon demurrer, the smelter had been completed and had been in actual operation for a period of nearly three years. According to the briefs of respective counsel, and it was so conceded during the oral argument

of the case in this court, it was admitted in the court below, and has been so admitted in this court, that the actual operation of the smelter has occasioned no damage whatever to appellant.  From the brief of counsel for respondent we quote:

"At the time the demurrer was sustained, the smelter had been in operation nearly three years.  If any damage resulted from its operation, counsel had a golden opportunity to point out, in an amended complaint, just what damage the smelter had inflicted upon his land. He then had a splendid chance to allege what had occurred, instead of what would occur; a chance to show the actual effect of the smelter's operations upon the land in question by actual results.  In short, he was then in a position to allege facts which might constitute a cause of action, if he had one, instead of relying upon the choice collection of vague prophecies, recitals, and conclusions which are now before the court.  But, in spite of actual experience, reinforced by definite knowledge of what the smelter had actually done, by its operations, which would show what damage, if any existed, counsel refused to amend or to set up a real cause of action, if he had one, but stood on his original complaint as to what would occur, but which evidently has not occurred."

Counsel for appellant in his reply brief says:

"Counsel twits us with not amending our complaint by alleging damages since the commencement of the action.  Would it not be more reasonable for the court to infer that none had occurred, and if the filing of this suit has prevented the anticipated damage it has accomplished for the time all it was designed to accomplish, and why should defendant seek to maintain a judgment based on the proposition that no such preventive suit can be maintained?  If no damages have or shall accrue, we shall be quite as much pleased as defendant, but we do object to a judgment based on the ground that a suit to prevent an injury will not lie, and sought to be supported by the argument that, even

if the damage did occur, it would be 'consequential' and *damnum absque injuria."*

To constitute a real controversy requires something more substantial than a mere objection to a judgment because based on the ground that a suit to prevent an injury will not lie, or that the judgment is sought to be supported by an argument of opposing counsel which counsel for appellant deems fallacious. The mere fact that the court below held, whether rightly or erroneously, that to constitute a cause of action there must be an allegation of existing damage does not present a question affecting any existing rights of appellant, when it is conceded that the smelter is now a reality and has been in actual operation for a period of nearly three years without occasioning any damage whatever. It is conceded that plaintiff cannot establish the allegations of the complaint; that the allegations of threatened injury are completely overcome by the actual subsequent development of the real facts. Counsel for appellant, in effect, says that the defendant company may have so operated their smelter as not to produce the damaging fumes, by not smelting ores which would occasion them, and that this result may have been brought about by the bringing of this action. Counsel for appellant also expresses the hope that no injury will result in the future, and that this great industry may continue to develop the country without damage to his client's interests.

This presents no argument why the court should speculate upon what may develop as a result of future operations in the fact of the admission that past operations have occasioned no injury.

It may be that actual conditions may never arise requiring this court to apply the law to facts such as are alleged in this complaint. It is devoutly to be hoped that they never will. It will be time enough, however, to determine such a momentous question when an actual controversy arises between the parties to the present suit or other parties.

We are unable to see where appellant could forfeit any right of action which might subsequently accrue by reason of a dismissal of the present appeal for want of an actual controversy. Counsel has cited cases in support of the view that if a landowner stands by and permits a smelter to operate for a long number of years without objection and without bringing suit, he loses his right to later enjoin the operation thereof. Whatever, if anything, there may be in this view, it could have no application to appellant, for the appellant company instituted its suit promptly, and cannot be subject to a charge of laches unless such charge of laches was based upon conduct subsequent to the occurring of a cause of action in the future.

While we are convinced this appeal should be dismissed for the reason it presents only a moot question, we feel we owe it to distinguished counsel upon both sides of this case to say that, in the voluminous and exhaustive printed briefs filed in this case, they have made a most valuable contribution to the law upon a question which has vexed the courts of several states and has presented to the federal courts most serious questions for determination. Should the necessity ever arise for this court to determine the controversial questions sought to be presented in this case, the briefs of respective counsel may be resorted to as embodying a learned and comprehensive consideration of that which may be regarded as one of the most, if not the most, important subject a court of last resort in this state can consider.

For the reasons given, the appeal should be, and is, dismissed.