DON L. CIRAC, APPELLANT, *v.* LANDER COUNTY, ET AL., RESPONDENTS, ANDREA BURTON, INTERVENOR.

No. 11886

November 2, 1979                    602 P.2d 1012

[Rehearing denied December 10, 1979]

*Woodburn, Wedge, Blakey and Jeppson,* and *Daniel J. Klaich,* Reno, for Appellant.

*George G. Holden,* District Attorney, Lander County, and *Thomas L. Belaustegui,* Reno, for Respondents.

## OPINION

By the Court, MANOUKIAN, J.:

This is an appeal from an order of the district court granting summary judgment. The order had the effect of denying plaintiff-appellant's request for injunctive relief against respondents Lander County Board of Commissioners, and others, as a result of respondents' approval of a petition by taxpaying electors to place the question of the relocation of the county seat on a special election ballot.

Four questions confront us. They are: (1) Whether injunctive relief is the proper remedy; (2) Whether respondent board acted beyond the scope of its authority in validating signatures on the county seat removal petition of persons not listed on the tax assessment roll; (3) Whether the board's decision to allow the additional signatures was supported by sufficient evidence; and (4) Whether as a result of voter approval, this appeal is rendered moot.

On December 7, 1978, a petition was filed with Emma F. Gandolfo, then County Clerk of Lander County, seeking to have the question of moving the Lander County seat from Austin to Battle Mountain placed before the county electorate at a special election. The petition contained 949 signatures. At the direction of the Board of County Commissioners, an examination of the signatures on the petition was conducted by various county officers who were to report thereon to the board at a public meeting duly noticed and called for January 5, 1979.

At the meeting of January 5, 1979, the board heard reports from former County Clerk Emma F. Gandolfo, County Assessor Dorothy Estes, and County Treasurer Don Bruce. The County Assessor reported as to the number of signers who were listed on the real and personal property tax roll. The Treasurer gave a similar report as to real property taxpayers. The Clerk reported on miscellaneous irregularities such as duplicate signatures. No other evidence was received. The Board approved 882 of the signatures on the petition as meeting the statutory requirements. At the last general election in Lander County, 1410 legal votes were cast. Sixty percent of

that number, or 846 signatures of qualified electors and tax-payers, are required for a county seat removal petition before the petition can be found sufficient and an election ordered on the removal question. NRS 243.465. Because the number of signatures approved by the Board exceeded the required 846 signatures, the petition was found sufficient and the board ordered the county seat removal proposition placed on a special election ballot. The special election was subsequently set for May 15, 1979.

Of the 882 signatures approved by the Board, seventy-one were of persons whose names did not appear on either of the Lander County tax rolls. Without the inclusion of these signatures, the removal petition would be insufficient as a matter of law. The seventy-one names approved by the commissioners were of persons married to taxpayers actually listed on the county rolls. For each of the unlisted spouses, an affidavit of community property interest was filed along with the petition. The commissioners determined that the seventy-one unlisted spouses had a community property interest in taxed property and were, therefore, within the intendment of NRS 243.465, even though their names could not be found on the tax rolls.

On April 4, 1979, appellant filed a complaint for injunctive relief to prohibit the Board of Commissioners from placing the county seat relocation question before the voters. Prior to the hearing, Andrea Burton, a respondent herein, was permitted to intervene. At a hearing on May 11, 1979, four days before the scheduled election, the lower court granted summary judgment for respondents and intervenor. On May 15, 1979, the voters of Lander County approved the move of the county seat from Austin to Battle Mountain by a vote of 748 to 417.

*1. Jurisdiction.*

The threshold issue is that of jurisdiction. We must determine whether or not an injunction is a proper vehicle with which to resolve a question concerning the propriety of the acts of a county commission in conducting an inquiry into the sufficiency of the removal petition.[1] It is suggested here, as it was in

---

[1]NRS 243.470 provides:

1. At the time specified in the notice, the board of county commissioners shall meet and inquire into and determine the sufficiency of the petition and the validity of the signatures thereto, and if sufficient and signed by the required number the board shall make an order directing that the proposition to remove the county seat to the place named in the petition be submitted to a vote of the qualified electors of the county at the next general election, if the same is to occur within 6 months of the time of filing the petition; otherwise at a special election to be called for that purpose at any time not less than 4 months nor more than 6 months from the date of filing the petition with the clerk of the board.

Lauritzen v. Casady, 70 Nev. 136, 140, 261 P.2d 145, 146 (1953), and Caine v. Robbins, 61 Nev. 416, 426–27, 131 P.2d 516, 520 (1942), that an injunction is not the proper remedy because no irreparable injury is shown and because the purpose of the election is wholly political—as distinguished from elections involving proprietary or pecuniary interests. Although this court has held that we will not interrupt an election process by preventing an issue from being presented to the voters, Beebe v. Koontz, 72 Nev. 247, 252–53, 302 P.2d 486, 489 (1956); *see* Brown v. Georgetta, 70 Nev. 500, 275 P.2d 376 (1954), it is well settled that an injunction will lie in the lower court to prohibit an election when the ballot question, if passed, would involve election expenditures as well as the considerable expense of relocating the county seat and obvious irreparable injury. Lauritzen v. Casady, 70 Nev. at 140, 261 P.2d at 146; Caine v. Robbins, 61 Nev. at 426–27, 131 P.2d at 520. *See* NRCP 65. This is particularly so where, as here, the challenge to the qualifying petition was timely filed below and the election has now been concluded so that the election itself is not interrupted with our consideration. *Compare* Beebe v. Koontz, 72 Nev. at 252–53, 302 P.2d at 489 (no good cause shown for belated challenge) *and* Harrison v. Board of County Commissioners, 198 P.2d 1013 (Idaho 1948) (improper suit in equity after election) *with* Lauritzen v. Casady, 70 Nev. at 137–38, 261 P.2d at 145 (sufficiency of petition properly challenged prior to election).

If respondent board transcended its statutory authority in conducting the inquiry of the qualifying petition, then the board itself was without jurisdiction to call an election. Thus, the question of the board's jurisdiction is the substantive issue required to be decided. A resolution of this issue, to which we now turn for consideration, will necessarily be dispositive of this appeal.

## 2. The Unlisted Names.

Nevada law specifically provides for the removal of a county seat and requires a petition be signed by taxpayers "as appears by the last real or personal property assessment roll. . . ." NRS 243.465.[2] This petition must be signed by persons

2. No names shall be withdrawn from the petition after the same has been filed with the clerk of the board of county commissioners except in cases of actual fraud in the procuring of signatures to the same.

[2]NRS 243.465 provides:
Whenever the residents of any county in this state shall file a petition with the clerk of the board of county commissioners, signed by *qualified electors* of the county, *who are also taxpayers* of the county *as appears by the last real or personal property assessment roll,* equal in number to at least 60 percent of the legal votes cast at the last preceding general election in the county, asking for

equal in number to those casting sixty percent of the legal votes at the last general election. *Id.* When such petition is filed, the board of county commissioners must "meet and inquire into and determine the sufficiency of the petition and the validity of the signatures. . . ." NRS 243.470. If there is a sufficient number of signatures, an election must be held.

In the instant case, the board validated seventy-one signatures of persons whose names did not appear on the tax rolls but who allegedly held a community property interest in property listed on the rolls under the name of a spouse. Without these signatures the qualifying petition would have been insufficient.

In a previous case, this court held, under a predecessor of the present statute, that a person who does appear on the tax assessment roll is qualified to sign a petition. State ex rel. Kaufman v. Martin, 32 Nev. 197, 205, 106 P. 318, 319–20 (1910), *construing* 1900 Nev.Comp.Laws § 5007. There, the board of county commissioners removed the signatures of forty-two persons whose names actually appeared on the assessment rolls but only in a partnership capacity. We held the action of removal of signatures to be error but did not address the issue whether names could be added. The court in *Kaufman* also held that a petitioner would not be disqualified if he possessed "the substantial qualifications and [was] a taxpayer and voter as indicated." *Id.* at 205, 106 P. at 320. Some signers had not registered for the previous special election but had registered for the general election. Such was sufficient compliance with the statute requiring signatures of "qualified electors."

The standard of construction to be used in the present case is crucial. We query whether there must be strict compliance with the language requiring a person to be a taxpayer "as appears by the last real or personal property assessment roll" or a liberal construction which allows signatures of those who are taxpayers but do not appear as such?

*a. Application of Strict Construction.*—This court has previously demanded "strict adherence to the authentication requirements of the Constitution governing an initiative petition." Lundberg v. Koontz, 82 Nev. 360, 366, 418 P.2d 808,

---

the removal of the county seat of the county to some other designated place, the board of county commissioners shall fix a time for a public hearing upon the petition, which time shall be within 30 days after the filing of the petition and the clerk of the board of county commissioners shall give notice thereof by publication in a newspaper published in the county as may be designated by the board, at least once in each week for 2 weeks, the first publication to be at least 2 weeks before the date of hearing. (Emphasis added.)

811 (1966). And "when the language of a statute is plain, its intention must be deduced from such language, and the court has no right to go beyond it." State ex rel. Hess v. Washoe County, 6 Nev. 104, 107 (1870).

In an early Montana case, it was determined that the board of county commissioners could not disregard names which were actually on the poll books and assessment rolls. In order to find that number on the county seat removal petition to be the percentage required, the board removed from the rolls names of those who had ceased to be legal voters or taxpayers since the last records were made. Ainsworth v. McKay, 175 P. 887, 887-88 (Mont. 1918). There the statute provided the board "shall compare such petition with the poll books . . . [and] the listed assessment roll. . . ." *Id.* at 887. The court held that when there are no constitutional restrictions, the legislature can prescribe the chosen test.

If we find that respondent board has the power to add names to the assessment rolls, what would be the result? It may be that the doors would be opened to many more people, organizations or groups who were not originally on the tax rolls. There are a number of situations in which actual taxpayers and eligible voters are omitted from the tax rolls. One situation, for example, is with holders in joint tenancy where only one owner was designedly or mistakenly put on the roll. In addition, a partnership or closely held corporation may be taxed by an entity name, although the individual partners or shareholders are paying the taxes. Similarly, a new owner of property since the closing date of the rolls may wish to be considered a "taxpayer" for these purposes. With personal property, such as a mobile home being moved into the county, the assessor's office may only be informed by the mobile park or mobile sales dealer of the name of one owner. In reality, these assets may be held as community property or in joint tenancy. By casual inspection, however, the adoption of NRS 243.465 apparently reflects the legislative intent to give the board a simple way of determining the importance of an issue to the people of the county considering the people likely to vote on that issue. A "liberal construction" of NRS 243.465 may vitiate that intent.

*b. Application of Liberal Construction.*—On the other hand, although our court has essentially followed the above standards, several distinctions have developed. If the words of a statute are clear, we should not add to or alter them to accomplish a purpose not on the face of the statute or apparent from permissible extrinsic aids such as legislative history or committee reports. Lauritzen v. Casady, 70 Nev. at 139, 261

P.2d at 146. But did the legislature in this case foresee the present problems? Absent evidence that it did, we must speculate as to how it would have dealt with them.

Certainly, the "legislature may adopt such rules . . . as may be deemed necessary to test the qualifications of an elector." State ex rel. Whitney v. Findlay, 20 Nev. 198, 202, 19 P. 241, 243 (1888). But such rules must not deny or abridge a person's constitutional right to vote and must be reasonable, impartial, and uniform. *Id.* In *Whitney,* the court could not add to the constitutional requirements to vote. And, notably, the *Lundberg* court was discussing *constitutional* and not statutory requirements when it called for strict construction. Lundberg v. Koontz, 82 Nev. at 366, 418 P.2d at 810–11. In the present case, however, the petition requirements are statutory and not constitutional. *See* Springer v. Mount, 86 Nev. 806, 809–10, 477 P.2d 159, 160–61 (1970) (ZENOFF, J., dissenting) (demonstrating difference in construction). It should also be seen that unlike the statute considered in Ainsworth v. McKay, 175 P. at 887, the present statute does not say the board "shall compare" the petition with the roll, but says the signers should be taxpayers "as shown" on the last assessment roll.

This court has liberally construed statutes regulating recall and candidacy petitions. *See* Cleland v. District Court, 92 Nev. 454, 552 P.2d 488 (1976); Springer v. Mount, 86 Nev. 806, 477 P.2d 159 (1970). We doubt that the legislature here wished to prevent truly qualified taxpayers from signing a petition or actually to prevent voters from voting on an issue of this importance.[3] And the right to vote should not be taken away due to a doubtful statutory construction or "mere technicality." Lynip v. Buckner, 22 Nev. 426, 439, 41 P. 762, 765 (1895) (improper handling of ballots by official in district attorney election). Construction of laws must be "according to their spirit and meaning, and not merely according to their letter." *Id.*

---

[3]Indeed, to say a person here cannot sign a petition such as the one before us arguably presents an equal protection problem. Our statute requires that a person signing the petition be a taxpayer. And if only non-taxpayers desire to have a county seat change, their inability to sign a qualifying petition may preclude them from voting on the issue. If our statute produces a classification and denies the fundamental right to vote, without a showing of a compelling governmental interest, there may be a violation of equal protection. Hill v. Stone, 421 U.S. 289, 297 (1975); Kramer v. Union Free School District No. 15, 395 U.S. 621, 626 (1969). In light of our disposition here, however, in finding that non-listed taxpaying spouses may sign a petition, we need not address the constitutional issue.

A reading of NRS 243.470 also reflects that the legislature wished to leave some reasonable authority with the board by providing that it should "inquire into and determine the sufficiency of the petition. . . ." NRS 243.470.

By analogy, when confronted with recall and candidacy statutes, this court has found that the rule of substantial compliance best furthers the purpose of insuring that only registered voters are engaged in the qualifying procedures. Cleland v. District Court, 92 Nev. at 456, 552 P.2d at 490; Springer v. Mount, 86 Nev. at 809, 477 P.2d at 160. It is true that this was with regard to whether persons fully complied with the requirement of providing their address. In this factual context, though, we adopt the rule of substantial compliance, believing it proper to allow "qualified electors of the county, who are also taxpayers of the county" (NRS 243.465) to sign a qualifying petition for the removal of a county seat. Significantly, appellant does not deny that the signers in question were taxpayers. The only contention is that they simply do not appear on the real or personal property assessment roll as called for by the statute.

Furthermore, this court has recognized the fact that community property of spouses may be subject to liability of judgments whether or not the wife was a party to the suit. Randono v. Turk, 86 Nev. 123, 131-32, 466 P.2d 218, 224 (1970). And, of course, both spouses must join in any conveyance or encumbrance of community real property. NRS 123.230(3).

Determining that we have the power to inquire into the real—as distinct from ostensible—legislative purpose, we conclude that the allowance of the board's action in the present case complements legislative intent and is, indeed, necessary to extend the statute's provision to persons who come within its equity. We perceive little distinction from the board's powers outside a petition situation. Statutes allow the board of commissioners to place previously omitted property on the assessment roll, NRS 244.516, or to modify an assessment after examining a report involving a new part-owner. NRS 361.790. In this context, we agree with the trial court that a spouse with a community property interest is in fact a taxpayer and on a proper showing should be entitled to sign the petition. We believe that our interpretation does no violence to the language chosen by the legislature.

3. *Sufficiency of the Evidence.*

When a petition for the removal of a county seat is filed, the board of county commissioners "shall meet and inquire into and determine the sufficiency of the petition and the validity of

the signatures thereto" at a public hearing. NRS 243.470. As can be seen, the statute does not specifically make clear whether evidence can be taken and, if so, what kind and to what extent.

> As we have previously stated, the board of county commissioners is a body possessing but limited and special powers; that, when its power or authority to do any particular thing is questioned, the record must show affirmatively all the facts necessary to give it authority to perform the act complained of, and that, when this is not the case, the presumption is against its jurisdiction.

Godchaux v. Carpenter, 19 Nev. 415, 418, 14 P. 140, 141 (1887) (citations omitted). In *Godchaux,* our court found the board without jurisdiction to open a road based on a petition. The record failed to show that the board had found a majority of resident taxpayers of a road district, "according to the last previous assessment roll," had signed the petition. *Id.* at 417, 14 P. at 140–41. Thus, board jurisdiction may be lacking when insufficient evidence appears in the record to show a petition is proper. *See* Johnson v. Eureka County, 12 Nev. 28 (1877).

In the present case, the board determined that certain persons had a community interest in property for which a spouse was listed as the taxpayer. As such, the board concluded that it could add the unlisted persons to the tax rolls. The precise subsidiary question before us is whether a community interest is demonstrated by the evidence presented to the board.

Here, the evidence of a community interest considered by the board included seventy-one identical affidavits signed by a spouse actually listed on the assessment rolls. These affidavits stated the affiant was the owner of property in Lander County and that a second person was his or her spouse and had a "present, existing and equal interest in said property" according to NRS 123.220, 123.225 and that the property is community property. The lower court determined that such a document either constituted in itself sufficient evidence to transmute separate property to community or that this was a confirmation of community property. The court also believed that the affidavits were declarations against interest. *See* NRS 51.345. But the court acknowledged that in a divorce contest, the statement by itself would be a mere legal conclusion and that underlying facts relating to when the property was acquired would have to be found.

We recognize that community property is "[a]ll property, [other than gifts, inheritances and devises], acquired after marriage by either husband or wife, or both [unless there is an]

agreement in writing between the spouses, which is effective only as between them. . . ." NRS 123.220. And in divorce, estate or other familial *inter se* proceedings, in order for a presumption of community property to arise, facts of marriage and time and manner of acquisition must be shown and the opinions of parties are entitled to no weight. *See* Peters v. Peters, 92 Nev. 687, 557 P.2d 713 (1976); Barrett v. Frank, 46 Nev. 170, 208 P. 435 (1922). *See also In re* Pepper's Estate, 112 P. 62 (Cal. 1902); *In re* Wilson's Estate, 56 Nev. 353, 53 P.2d 339 (1936). But the difference in this case is that there appears to be no dispute between spouses as to the character of property. We express no opinion as to whether the affidavits presented to the board here would be sufficient to find either a presumption of character or a transmutation when the character of the property is in issue. We only find that under these facts, a declaration by the spouse listed as the taxpayer is sufficient evidence of character of property for the board of commissioners to find that a non-listed spouse is actually a taxpayer as well.

There are additional reasons for finding sufficient evidence under these facts. Although the board of county commissioners may be vested with "quasi-judicial" or reasonable discretionary or investigatory powers,[4] we cannot impose upon them all of the problems inherent in ascertaining a question which, in other situations, must be left to the judiciary. Additionally, we believe the legislature intended that ascertainment of the petitioners' status should be accurate yet convenient from the points of view of the board and other involved officials. Our holding allows for a proper balancing of the conflicting values—specifically, the minimization of error or fraud and the necessary preparation of adequate government records against the right to vote. *See* Dunn v. Blumstein, 405 U.S. 330 (1972); Springer v. Mount, 86 Nev. 806, 477 P.2d 159 (1970).

We conclude that the legislature must have intended that the propounded affidavits constitute sufficient evidence. The board did not err in so finding.

*4. Mootness.*

Respondents contend that as a result of voter approval at a May 15, 1979 special election, this appeal is rendered moot. We

---

[4]The board does have some discretion in certain matters. However, it must have a sufficient basis on which to support its jurisdiction. Where, as here, the board did have sufficient evidence before it, certiorari will not lie as the board has not exceeded its jurisdiction. NRS 34.020–.140. *See* State v. Board of Regents, 70 Nev. 144, 261 P.2d 515 (1953).

do not agree. Respondents rely on Harrison v. Board of County Commissioners, 198 P.2d 1013 (Idaho 1948). *Harrison* is easily distinguished from the instant case. There, the alleged insufficient petition was not challenged until approximately one year after the election and the contestant's complaint was materially defective on its face. Here, appellant timely instituted this equity action to test the validity of the petition and prevent the election. We believe a justiciable controversy has been presented. Moore v. Oglivie, 394 U.S. 814, 816 (1969). *See* Young Investment Co. v. Reno Club, Inc., 66 Nev. 216, 208 P.2d 297 (1949); Pacific Livestock Co. v. Mason Valley Mines Co., 39 Nev. 105, 153 P. 431 (1915).

Finally, returning to the question of jurisdiction, we conclude that respondent board was within its legal authority to call the election and that there was no basis for relief, either injunctive or through certiorari. We affirm the summary judgment.

MOWBRAY, C. J., concurs.

BATJER, J., concurring:

I agree with the majority opinion that injunctive relief is a proper remedy in this case and that this appeal is not rendered moot as a result of voter approval at the special election; however, I believe that the issues presented are far less ponderous than portrayed in that opinion.

Here with reference to the seventy-one names in question we have no problem of the county commissioners deleting names from or adding names to the petition, tax rolls or election rolls. The commissioners merely found those petitioners to be qualified electors and taxpayers of Lander County. They determined this by the fact that their spouses' names appeared on the last real or personal property assessment roll and from the affidavits signed by those spouses actually listed acknowledging the marital relationship and that the unlisted spouse had a present, existing and equal interest in the assessed property. The Commissioners met their statutory obligation of determining the sufficiency of the petition and the burden then shifted to any opponents to show the facts alleged in the affidavits to be false. This was not done.

NRS 243.465 does not require that petitioners names appear on the assessment roll, only that by an examination of the roll it appears that the petitioner is a taxpayer. That statute does not preclude the presentation of supporting affidavits as was done here.

I agree that the judgment of the district court must be affirmed.

GUNDERSON, J., concurs.

THOMPSON, J., dissenting:

I would set aside the summary judgment entered below and annul the result of the election. As stated in the majority opinion, 846 signatures of qualified electors and taxpayers were required before an election could be ordered. In finding a sufficient number of signatures, 882, the Board of Commissioners approved 71 signatures of persons whose names did not appear on the Lander County real or personal property assessment rolls. The 71 names so approved were of persons married to taxpayers who were listed. For each nonlisted spouse an affidavit of community property interest was filed.

1. The procedure for removal of a county seat to a new location is specified by statute. NRS 243.460–243.490. Qualified electors of the county who also are taxpayers as appears by the last real or personal property assessment roll, equal in number to at least 60 percent of the legal votes cast at the last preceding general election must sign the petition. If this does not occur, an election may not be held. Since 71 signatures of persons whose names did not appear on the assessment rolls were approved by the Board without which the petition was ineffective for want of requisite signatures, it is apparent that the statutory precondition was not met.

This court is not empowered to annul or alter the legislative direction that the names of the qualified electors and taxpayers must appear on the last real or personal property assessment roll. The legislative intent is clearly expressed and there is no occasion for construction. Blaisdell. v. Conklin, 62 Nev. 370, 373, 151 P.2d 626 (1944).

The apparent purpose of the use of the assessment rolls to identify valid signatures is to make the Board's determination simple and nondiscretionary. The Board was not granted authority to count other persons who otherwise might qualify as signatories. I read State v. Martin, 32 Nev. 197, 205, 106 P. 318 (1910), to support this point of view. The legislature wished to avoid imposing upon the Board of Commissioners a fact-finding burden more properly reserved for courts to be resolved in an adversary atmosphere.

2. It is suggested by respondents that a refusal by the Board to count the 71 signatures of persons whose names did not

appear on the assessment rolls would somehow deny equal protection in violation of our federal constitution. I find this suggestion unpersuasive. In the first place, that issue is not validly presented in this case. The signatures were counted. If they had not been counted and an equal protection challenge tendered, the issue would have to be resolved. That did not occur here. Aside from this fact, persons who own community property may have it listed under both names on the assessment rolls if they desire their interests to be reflected in title documents. Consequently, if they are ineligible to sign the petition because their names do not appear on the assessment rolls, that ineligibility must be attributed to them rather than to the statutory wording selected by the legislature.

Respectfully, I dissent.