923 P.2d 577 (1996)
STATE INDUSTRIAL INSURANCE SYSTEM, an Agency of the State of Nevada, Appellant/Cross-Respondent,
v.
Ralph MILLER, Respondent/Cross-Appellant.
No. 26980.
Supreme Court of Nevada.
August 28, 1996.
Lenard T. Ormsby, General Counsel, and Shirley D. Lindsey, Associate General Counsel, Carson City, for Appellant.
*578 Nancyann Leeder, Nevada Attorney for Injured Workers, and Gary T. Watson, Deputy Nevada Attorney for Injured Workers, Carson City, for Respondent.

OPINION
SHEARING, Justice:
In May 1984, respondent/cross-appellant Ralph Miller was employed as an operator in the production department of Pacific Engineering Company of Nevada in Henderson, Nevada, when his low back was injured in a job accident. Later in 1984, he underwent L3-4 and L4-5 discectomy surgery and laminectomy surgery. Miller filed a claim for worker compensation with the appellant/cross-respondent State Industrial Insurance System (SIIS).
In October 1985, Miller was rated at twenty-three percent (23%) whole body permanent partial disability (PPD) impairment by Dr. Butters, SIIS medical advisor; in November 1985, pursuant to former NRS 616.607(1), he elected to receive a one-time lump sum payment from SIIS of $45,236.22[1] rather than receive monthly payments of $281.60 until he reached the age of 68 on February 14, 2015.
Miller's work-related injury worsened thereafter. After reopening his claim and receiving further medical benefits, including temporary total disability (TTD) compensation,[2] Miller underwent a second PPD evaluation in 1987 and was found to have a PPD whole body impairment of twenty-seven percent (27%). In January 1988, he received a second one-time lump sum payment of $7,768.60[3] for the additional four percent (4%) disability in lieu of receiving $48.97 in monthly payments until he reached the age of 70[4] on February 14, 2017.
In February 1993, Miller was granted permanent total disability (PTD) status after careful review by SIIS's medical advisor and administrative staff.
Miller was entitled to receive $1,360.40 per month as PTD benefits (66 2/3 percent of his average monthly wage of $2,040.60) pursuant to former NRS 616.580(1)(a). However, this amount for Miller's total disability needed to be adjusted to reflect the lump sum payments Miller received for his partial disability. In calculating the amount of PTD benefits SIIS would actually pay, SIIS declared that it would deduct the percentage of Miller's PPD, 27%, from his total monthly PTD payment until his 68th birthday. At that time, SIIS would remove the 23% reduction and deduct only the remaining 4% of his total monthly PTD payment until his 70th birthday. After the 70th birthday, SIIS would initiate the full monthly PTD payment of $1,360.40. Thus, the monthly calculation would be as follows:

 $2040.60 × 2/3 = $1360.40
 $1360.40 × 73% (100% - 23% - 4%) = $993.09 (to age 68)
 $1360.40 × 96% (100% - 4%) = $1305.98 (to age 70)

In 1993, Miller filed an appeal from SIIS's decision and a hearing was held before a hearing officer. The hearing officer affirmed SIIS's determination. Miller then filed an appeal from that decision with an appeals officer. In 1994, the appeals officer held that SIIS erred in reducing Miller's PTD benefits by the percentage of previously awarded PPD, concluding that, pursuant to former NRS 616.613(1), SIIS should reduce the PTD only by the actual dollar amount of PPD benefits paid to Miller rather than by the percentage of his PPD. Accordingly, SIIS could only reduce Miller's PTD compensation until it recovered the exact amount of the lump sums. Once the exact sums were recovered, there could be no further deduction. Under this requirement, the amount reduced *579 from Miller's monthly PTD compensation would be substantially less than under the "percentage of disability" formula used by SIIS.
In response to this decision, SIIS filed a petition for judicial review with the district court in April 1994. Miller later cross-petitioned, claiming that the appeals officer erred in permitting SIIS to deduct any previous PPD compensation paid to Miller. In February 1995, the district court affirmed the appeals officer's decision by denying both the petition and cross-petition for judicial review.
SIIS filed this appeal and now claims that the July 1, 1995, amended version of NRS 616.580, now codified as NRS 616C.440, which is retroactively applicable to Miller's PTD claim, mandates that SIIS deduct the value[5] of Miller's prior PPD awards from Miller's PTD compensation, i.e., Miller's PTD compensation should be calculated as 66 2/3 percent of his average monthly wage, less the amount he would have received in monthly compensation until the age used in calculating his lump sum award, to wit:

 $2040.60 x 2/3 = $1360.40
 - 281.60 until 2/14/15
 ________
 1078.80
 - 48.97 until 2/14/17
 ________
 $1029.83

Accordingly, SIIS claims Miller's PTD benefits should be paid at the monthly rate of $1,029.83 until 2/14/15, then increase by $281.60 to $1311.43 until 2/14/17, after which time Miller can receive the full amount of his PTD monthly payments. This calculation would allow SIIS to deduct substantially more from Miller's PTD compensation than if SIIS could only deduct the actual amount paid to Miller in lump sum.
Miller filed a cross-appeal, claiming that there should be no deduction whatsoever based on the prior PTD awards. Nevertheless, the statute relevant to Miller's cross-appeal, former NRS 616.613, has also been amended, NRS 616C.405, and Miller now concedes that his cross-appeal claim is meritless in light of the amendment.
In sum, there are three ways of reducing Miller's PTD compensation that are or have been contemplated in this case. The first is to reduce the PTD compensation by the percentage of PPD. However, that method is no longer contemplated by the parties since the amended statutes do not allow for this type of deduction. The second is to reduce the PTD compensation until SIIS recovers the actual amount of PPD it awarded to Miller in lump sum. This is the method used by the appeals officer and upheld by the district court and urged by Miller here. The third is to reduce Miller's monthly PTD compensation by the value of Miller's previously received PPD lump sum awards, i.e., the amount per month that Miller would have received had he elected to receive monthly installments. This is the method urged by SIIS on appeal.
The sole issue presented by this appeal is how Miller's PTD benefits are to be calculated under NRS 616C.440 (former NRS 616.580, as amended effective July 1, 1995).
The appeals officer and the district court did not have the benefit of this new statute when it made its decisions, and this court must now determine how the offset in payments should be calculated under it. The construction of an administrative statute is a question of law for this court's de novo review. Maxwell v. SIIS, 109 Nev. 327, 329, 849 P.2d 267, 269 (1993); Nyberg v. Nev. Indus. Comm'n, 100 Nev. 322, 324, 683 P.2d 3, 4 (1984); American Int'l Vacations v. MacBride, 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983).
The relevant portions of NRS 616C.440 state as follows:
1. Except as otherwise provided in this section and NRS 616C.175, every employee in the employ of an employer, within the provisions of chapters 616A to 616D, inclusive, of NRS, who is injured by accident arising out of and in the course of employment, *580 or his dependents as defined in chapters 616A to 616D, inclusive, of NRS, is entitled to receive the following compensation for permanent total disability:
(a) In cases of total disability adjudged to be permanent, compensation per month of 66 2/3 percent of the average monthly wage.
(b) If there is a previous disability, as the loss of one eye, one hand, one foot or any other previous permanent disability, the percentage of disability for a subsequent injury must be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury, but such a deduction for a previous award for permanent partial disability must be made in a reasonable manner and must not be more than the total amount which was paid for the previous award for permanent partial disability.

....
4. If an employee who has received compensation in a lump sum for a permanent partial disability pursuant to NRS 616C.495 is subsequently determined to be permanently and totally disabled, the compensation for the permanent total disability must be reduced as follows:

(a) If the employee has not received a minimum lump sum, the employee's insurer shall deduct from the compensation for the permanent total disability an amount equal to the monthly installment rate for awards for permanent partial disability until the employee reaches the age upon which his disability was calculated; or
....
The provisions of this subsection are retroactive for all claims for compensation for a permanent total disability remaining open on July 1, 1995.
(Emphasis added).
Miller focuses on the language in NRS 616C.440(1)(b) for the proposition that SIIS may only recover the exact amount of compensation actually paid to him: "[S]uch a deduction for a previous award for permanent partial disability must be made in a reasonable manner and must not be more than the total amount which was paid for the previous award for permanent partial disability." (Emphasis added). Thus, he contends that this court should affirm the appeals officer's decision on the grounds that the 1995 amendments do not change the result in his case and actually support the appeals officer's decision. We disagree with Miller's contention.
NRS 616C.440(1)(b) is not as specific as the language in NRS 616C.440(4)(a), which clearly controls the present case. NRS 616C.440(1)(b) does not speak specifically to previous PPD awards paid in lump sum pursuant to NRS 616C.495 (former NRS 616.607), as Miller was paid. Moreover, NRS 616C.440(1)(b) contains language regarding a subsequent injury. Miller suffered no "subsequent injury" upgrading him to PTD status. In contrast, NRS 616C.440(4)(a) is quite specific and dispositive of the instant case. Tracking the language in that subsection as quoted above, Miller, the employee, received compensation in a lump sum for a PPD pursuant to NRS 616C.495 (former NRS 616.607) and was subsequently determined to be permanently and totally disabled. Accordingly, the compensation for the PTD must be reduced as follows: since Miller did not receive a minimum lump sum, SIIS must deduct from the compensation for PTD "an amount equal to the monthly installment rate" for his PPD awards until he "reaches the age upon which his disability was calculated."
Rules of statutory construction provide that "a specific statute takes precedence over a general statute." SIIS v. Surman, 103 Nev. 366, 368, 741 P.2d 1357, 1359 (1987). We agree with SIIS that NRS 616C.440(4)(a) contains language that is specifically applicable to the instant casea case where the PPD awards were paid in a lump sum pursuant to NRS 616C.495 (formerly NRS 616.607). Accordingly, SIIS may deduct the value of the compensation paid to Miller as represented in the monthly installments Miller would have received had he not taken a lump sum payment.
*581 In SIIS v. Snyder, 109 Nev. 1223, 1228, 865 P.2d 1168, 1171 (1993), this court stated the following:
An administrative agency such as SIIS, charged with the duty of administering an act, is impliedly clothed with power to construe the relevant laws and set necessary precedent to administrative action. The construction placed on a statute by the agency charged with the duty of administering it is entitled to deference. We find the SIIS' requirements to be a reasonable construction of and consistent with the legislative intent behind NRS 616.580.
(Citations omitted). SIIS, the administrative agency charged with the duty of administering the statute at issue in this case, is entitled to receive deference from this court to its interpretations of the laws it administers so long as such interpretations are "reasonable" and "consistent with the legislative intent." Id. Given that SIIS's interpretation of NRS 616C.440(4)(a) is correct when examining the specific language of that subsection, Miller would nevertheless have us believe that this interpretation is unreasonable and inconsistent with the legislative intent behind NRS 616C.440. Again, we disagree with Miller.
Miller argues that SIIS's interpretation of NRS 616C.440(4) is unreasonable as SIIS will be unjustly enriched if it is allowed to recapture the value, rather than the actual amount, of the prior lump sum PPD awards paid to him. Miller is right that SIIS will collect more through its proposed method than if it were only allowed to recover the actual amount of the lump sums paid to Miller. However, we fail to see how this qualifies as unjust enrichment.
Miller's argument ignores the commercial reality that money has value over time and that the lump sum awards given to Miller represented the present-day value of the total payments he would have received had he elected monthly or annual payments over a nearly 29-year period. Thus, the lump sums and installment payments are financial equivalents. In calculating the present-day value of the installment payments, SIIS reduced the amount of the total payments Miller would have received in installments to reflect the then present value of the stream of income. When the present value of money due in the future is reduced to present value, some factor must be used to reflect the reasonable earning power of the money over time. That factor varies based on what is viewed as a reasonable rate of interest. In the instant case, the factor used to calculate the present value of Miller's awards was established by using actuary tables adopted by the Division of Industrial Relations of the Department of Business and Industry for the State of Nevada.[6] According to SIIS, the installment payment plan offered Miller in 1985 would have been the approximate equivalent of investing the money in a savings account insured by the federal government. In 1985, Miller had the option of accepting the guaranteed annual return or of taking his chances in generating a higher yield. Miller elected to take the lump sums and had the option of directing his investment personally. If Miller had not elected to take the lump sums, he would have received the monthly installments. It is exactly those identical installment amounts that SIIS is seeking to offset from Miller's PTD benefits. Indeed, it is reasonable to assume that if SIIS had possession of the lump sum money paid to Miller, SIIS would gain interest income from that money sufficient to pay Miller the monthly PPD installments as they came due over the approximately 29-year period.
In fact, if Miller prevails in this matter, it is Miller, not SIIS, who will be unjustly enriched in that he will have the power to generate interest income from the lump sums with minimum deductions in his PTD benefits. This would amount to giving Miller an interest-free loan, i.e., it would have the same financial impact as if SIIS gave Miller a loan in 1985 and 1988 and allowed him to repay it, without interest, over a multi-year period.
*582 We conclude that SIIS's interpretation of NRS 616C.440(4) is reasonable in light of the financial circumstances outlined above.[7]
Miller contends, however, that there is no evidence in either pre-1995 legislative history or the legislative history of the 1995 amendments that the legislature intended to permit SIIS to deduct from a PTD award any amount other than the actual PPD compensation paid. In fact, he argues that the 1995 legislative history indicates that the legislature sought to correct the very alleged injustice of which he complains, i.e., SIIS is retrieving more than it has actually paid each claimant.
We do not read the legislative history as clearly as Miller reads it. In fact, it is quite plausible from our reading of the history that the legislature sought to address the alleged unfairness of SIIS reducing PTD payments by the prior PPD percentage of a distinct and separate injury. Miller points us to no conclusive legislative history indicating that the legislators did not intend to allow SIIS to recover the value of its prior lump sum PPD awards in cases falling within the purview of NRS 616C.440(4)(a). This court is not empowered to go beyond the face of an unambiguous statute to lend it construction contrary to its plain meaning and not apparent from the legislative history. See Cirac v. Lander County, 95 Nev. 723, 729, 602 P.2d 1012, 1016 (1979).
In sum, the plain language of NRS 616C.440(4)(a) permits SIIS to deduct from Miller's monthly PTD benefits the value of his previously received PPD lump sum awards, i.e., the amount per month that Miller would have received had he elected to receive monthly installments.
Accordingly, we vacate the order of the district court and remand for proceedings consistent with this opinion.
STEFFEN, C.J., and YOUNG, J., concur.
SPRINGER and ROSE, JJ., dissent.
SPRINGER, Justice, with whom ROSE, Justice, joins, dissenting:
NRS 616C.440 was the subject of intensive re-examination during the 1995 session of the legislature. The central figure in the deliberations before the involved legislative committees was Mr. John W. Taylor of the Southern Nevada Association of Injured Workers. Committee minutes portray Mr. Taylor's position in this way:
[H]e injured his eye in 1973, the case was reopened in 1982, and 1983 when he lost the eye. He was given an award of $5,500 [permanent partial disability]. He returned to work. In 1990 he injured his back, had an operation, went back to work and re-injured his back. In 1983 he was given a Permanent Total Disability Award. Now, SIIS wants him to repay $60,000.00 He commented SIIS wants to make money off the loss of his eye.... He commented the application of this statute is being applied retroactively ... and that he worked 17 years after his eye injury and now SIIS wants $60,000.00 for the loss of that eye.
Like John Taylor, Mr. Miller accepted a lump-sum payment for an adjudicated permanent partial disability. Now, like John Taylor, Mr. Miller is faced with having to repay SIIS substantially more money than he received by way of his lump-sum payment. The time periods are different in the two cases, and Mr. Miller does not have to pay back $60,000.00 on a $5,000.00 lump-sum payment; but the principle is the same.
I call the rule adopted by the majority the "pawn shop" rule because it makes injured *583 workers like Mr. Miller and John Taylor pay a "retroactive" pawn charge on their compensation award, i.e., what the majority characterizes as payment by injured workers for the "value" of the money that they received for previous injuries.
Although SIIS insisted on charging Mr. Miller a pawn charge on the money that it awarded him for his previous disability, on administrative appeal and judicial review, the reviewing tribunals ruled that SIIS should be permitted under the statute to reduce Miller's disability award only by the actual dollar amount received by him.[1]
In my judgment, the appeals officer and the district court were both correct in ruling that the statute permits a deduction of "not more than" the total amount which was paid for the previous award. I would add that it was unfair for SIIS to extract $60,000.00 out of an injured worker based on a $5,000.00 award (as apparently was the case with John Taylor), and that these kinds of retroactive charges are not consistent with the legislative intent.
The majority had to come up with a considerable amount of word-juggling and legerdemain to find legislative authority for charging injured workers pawn fees on previous disability awards. The majority ruling is not fair and is contrary to what the legislature was trying to do in these kinds of cases. As I read the legislative proceedings, the whole thrust was to avoid the kind of injustice complained of by John Taylor and Ralph Miller. Brian Stockton, Associate General Counsel of SIIS, read the 1995 legislation as correcting the John Taylor problem. Committee minutes show SIIS counsel Stockton as commenting that he was "happy with the [statutory] language presented and thinks it will prevent occurrences of problems such as these experienced by Mr. Taylor." How or why the SIIS would have reversed its position between the time the legislation was enacted and the present is a puzzlement.
Reading the comments of the various committee members of both Senate and Assembly, I cannot believe that the legislative intent was to surcharge workers for the cost or "value" of previously-awarded disability payments. If indeed, this were the legislative intent, this intent does not manifest itself in NRS 616C.440. Certainly if the legislature had intended to place this heavy burden on injured workers, it should have clearly said so. The legislation could have read something like this:
If a worker accepts a lump-sum permanent partial disability award, that worker will upon receiving a subsequent permanent total disability award be required to pay back the entire amount of the previous permanent partial award plus interest on the amount of that award from the time it was received.
At the time they received their lump-sum awards Mr. Taylor and Mr. Miller did not understand the pawn charge rule. There is no reason (unless perhaps they were C.P.A.s) that they would have dreamed that this burden was going to have to be carried.
The majority opinion is contrary to the wording of the statute, contrary to the intent of the legislature, contrary to fair treatment of injured workers, contrary to the common understanding by injured workers of disability awards, and contrary to common fairness and common sense. I dissent.
NOTES
[1] There is other evidence in the record that the lump sum payment was $46,145.77.
[2] The SIIS offset a portion of his TTD compensation with a bi-weekly recoupment of his previous PPD award pursuant to former NRS 616.613.
[3] There is other evidence in the record that the lump sum payment was $8,236.14.
[4] Former NRS 616.605(6) provided that lump sum awards be calculated until the age of 70, or for a five-year period, whichever is later. In a previous version, lump sums were calculated to age 68. That is why Miller's first lump sum at 23% was calculated to age 68.
[5] Value takes into consideration that money loses value over time. It is SIIS's contention that Miller's lump sum awards reflected the present value of Miller's PPD benefits and thus were the financial equivalent of the total money Miller was entitled to receive in monthly payments over the approximately 29-year span.
[6] See former NRS 616.053 (current 616A.100); former NRS 616.607(5) (current NRS 616C.495(5)).
[7] NRS 616C.440(4)(a) completely harmonizes with NRS 616C.405(1):

Except as otherwise provided in subsection 4 of NRS 616C.440, an employee who is receiving compensation for:
1. A permanent total disability is not entitled to compensation for permanent partial disability during the period when he is receiving compensation for the permanent total disability.
Under this statute, installment payments of PPD must cease when an injured worker is deemed eligible for PTD benefits. In cases such as the instant case, where the injured worker has elected to take his PPD award in a lump sum, it is not possible to "stop" payment of the PPD award during the period the injured worker is receiving PTD benefits. Logically, in the case of a lump sum PPD, it is necessary to reduce the PTD compensation level as provided in NRS 616C.440(4)(a) to prevent the injured worker from obtaining double recovery.
[1] NRS 616C.440(1)(b) provides that a "deduction for a previous award for permanent partial disability must be made in a reasonable manner and must not be more than the total amount which was paid for the previous award for permanent partial disability."